[No. S128603. Aug. 31, 2006.]

THE COPLEY PRESS, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
COUNTY OF SAN DIEGO et al., Real Parties in Interest.

1274

## Counsel

Harold W. Fuson, Jr., Judith L. Fanshaw, Scott A. Wahrenbrock; Sheppard Mullin Richter & Hampton, Guylyn R. Cummins, Robert J. Stumpf, Gary L. Bostwick and Jean-Paul Jassy for Petitioner.

Casey Gwinn, City Attorney (San Diego), Anita M. Noone, Assistant City Attorney, and James M. Chapin, Deputy City Attorney, for City of San Diego and City of San Diego Civil Service Commission as Amici Curiae on behalf of Petitioner.

Law Offices of Amitai Schwartz, Amitai Schwartz; Alan L. Schlosser, Mark Schlosberg; Peter Eliasberg; Jordan C. Budd, Elvira Cacciavillani and David Blair-Loy for the ACLU Foundation of Northern California, the ACLU Foundation of Southern California and the ACLU Foundation of San Diego & Imperial Counties as Amici Curiae on behalf of Petitioner.

Davis Wright Tremaine, Kelli Sager, Alonzo Wickers IV, Susan E. Seager, Thomas R. Burke; David Tomlin; Russell F. Coleman, David S. Starr; Charles J. Glasser, Jr.; Peter Scheer; Thomas W. Newton, James W. Ewert; Terry Francke; Levine Sullivan Koch & Schulz, James E. Grossberg; Eve Burton, Jonathan R. Donnellan; Karlene W. Goller; Stephen J. Burns; DLA Piper Rudnick Gray Cary, James M. Chadwick; David McCraw; Lucy A. Dalglish; Loeb & Loeb and Douglas E. Mirell for Los Angeles Times Communications LLC, Freedom Communications, Inc., doing business as The Orange County Register, the Hearst Corporation, The Associated Press, The Bakersfield Californian, The New York Times Company, The McClatchy Company, Belo Corp., The San Jose Mercury News, Inc., Bloomberg L.P., California Newspaper Publishers Association, Society of Professional Journalists, Greater Los Angeles Chapter, The Reporters Committee for Freedom of the Press, California First Amendment Coalition, Californians Aware and Professor Erwin Chemerinsky as Amici Curiae on behalf of Petitioner.

Elise S. Rose and Bruce A. Mongross for California State Personnel Board as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

John J. Sansone, County Counsel, and William H. Songer, Deputy County Counsel, for Real Parties in Interest County of San Diego and San Diego County Civil Service Commission.

Bobbitt & Pinckard, Everett L. Bobbitt, Richard L. Pinckard, Bradley M. Fields and Julie S. Buechler for Real Parties in Interest San Diego Sheriffs' Association and San Diego Police Officers' Association.

Carroll, Burdick & McDonough, Gary M. Messing; Ivey, Smith & Ramirez and Jean-Claude Andre; for Peace Officers Research Association of California's Legal Defense Fund as Amicus Curiae on behalf of Real Parties in Interest San Diego Sheriffs' Association and San Diego Police Officers' Association.

**O**PINION

**CHIN, J.**—We granted review in this case to consider the extent, if any, to which the California Public Records Act (CPRA or Act) (Gov. Code, § 6250 et seq.) requires disclosure to a newspaper publisher of records of the County of San Diego Civil Service Commission (Commission) relating to a peace officer's administrative appeal of a disciplinary matter. The Court of Appeal held that the trial court erred in denying the disclosure request in its entirety, and ordered the Commission to disclose the requested records, including the name of the peace officer, redacted only to exclude certain written material in the personnel file maintained by the officer's "employing agency," as that term is used in Penal Code section 832.8,[1] and oral testimony that is a recitation from that material. We find that the Court of Appeal read the term "employing agency" too narrowly. We therefore reverse the Court of Appeal's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 2003, The Copley Press, Inc. (Copley), which publishes the San Diego Union-Tribune newspaper, learned that the Commission had scheduled a closed hearing in case No. 2003-0003, in which a deputy sheriff of San Diego County (sometimes hereafter referred to as County) was appealing from a termination notice. Copley requested access to the hearing, but the Commission denied the request. After the appeal's completion, Copley filed several CPRA requests with the Commission asking for disclosure of any documents filed with, submitted to, or created by the Commission concerning the appeal (including its findings or decision) and any tape recordings of the hearing. The Commission withheld most of its records, including the deputy's name, asserting disclosure exemptions under Government Code section 6254, subdivisions (c) and (k).

Copley then filed in the superior court a petition for a writ of mandate and complaint for declaratory and injunctive relief, seeking access to the remaining records and a declaration that the Commission must hold public hearings unless closure is otherwise justified by law. With the court's permission, the San Diego Police Officers Association and the San Diego County Sheriffs' Association (interveners) intervened. On May 14, 2003, the trial court denied relief, citing *San Diego Police Officers Assn. v. City of San Diego Civil Service Com.* (2002) 104 Cal.App.4th 275 [128 Cal.Rptr.2d 248] (*SDPOA*) and sections 832.7 and 832.8.

Shortly after the trial court filed its decision, Copley filed two more CPRA requests with the Commission asking for all documents regarding the appeal

---

[1] All further unlabeled statutory references are to the Penal Code.

"in unredacted form."[2] In response, the Commission provided a number of additional documents, including the termination order—which cited the grounds for discipline and outlined the facts supporting each ground—the hearing officer's recommendation that the Commission accept a stipulation disposing of the appeal, and the minutes of the meeting during which the Commission approved the recommendation. According to those documents, the termination order was based on the deputy's failure to arrest a suspect in a domestic violence incident despite having probable cause to do so, failure to prepare a written report documenting the incident, and dishonesty in falsely indicating in the patrol log that the victim bore no signs of injury and the suspect was "gone on arrival." In the stipulation, the deputy voluntarily resigned and withdrew the appeal, and the sheriff's department withdrew the termination action and agreed to change the deputy's exit status to "terminated—resignation by mutual consent" and to "line out" the untruthfulness charge.

Unsatisfied, Copley filed a petition for writ of mandate with the Court of Appeal seeking relief from the trial court's order of May 14, 2003. It asked for an order requiring the Commission to disclose the deputy's name and all documents, evidence, and audiotapes from the appeal. It also requested a declaration that the Commission's denial of access to the appeal hearing and its failure to disclose all hearing materials were unlawful, and an injunction precluding future denials of access.

The Court of Appeal granted partial relief. Regarding disclosure of the Commission's records, the court first held that the confidentiality provisions of Penal Code section 832.7 "should be imported into the CPRA through" Government Code section 6254, subdivision (k), which provides that the CPRA does not require disclosure of "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." The Court of Appeal next reasoned that Penal Code section 832.7's "confidentiality provision has a fundamental limitation [under Penal Code section 832.8]: it applies only to files maintained *by the employing agency* of the peace officer," i.e., "written material maintained in the peace officer's personnel file or oral testimony that is a recitation from material in that file." Thus, it "does not apply to information about a peace officer the source of which is other than the employing agency's file maintained under the individual's name, even if that information is duplicated in that file." It does not apply to "[t]estimony of a percipient witness to events, or from documents not maintained in the personnel file . . . even though that information may be identical to or

---

[2] Copley's stated "purpose" for these requests was to obtain documents "that were not available at the time of [its earlier] requests" and "to make sure [it had] all documents relating to the case that" the Commission was "going to release."

duplicative of information in the personnel file." It also does not apply to material from the appeal that is "added to the peace officer's file maintained by the employing agency." The Court of Appeal thus concluded that insofar as the Commission's records "are not documents from a personnel file or recited from documents in a personnel file," they "are outside the definitional limitations applicable to [Penal Code] section 832.7, [and] a CPRA request for those records may not be denied under [Government Code section 6254,] subdivision (k)'s exemption for records 'the disclosure of which is exempted or prohibited pursuant to' section 832.7."

The Court of Appeal applied "[a] similar rationale" to reject the Commission's reliance on Government Code section 6254, subdivision (c), which exempts from disclosure "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of privacy." This provision, the Court of Appeal held, applies only to information that "is within the definitional limitation of Penal Code section 832.8," i.e., that it be part of a "file maintained . . . by [the officer's] employing agency." Thus, the Court of Appeal held that the Commission had "erred by relying on [Government Code] section 6254, subdivisions (c) and (k) to reject Copley's CPRA request in its entirety." It ordered issuance of a writ directing the trial court to order the Commission "to release its records in appeal Case No. 2003-0003, including the name of the peace officer, redacted only to exclude information within the limited ambit of Penal Code sections 832.7 and 832.8, as defined in [the court's] opinion."[3]

We granted interveners' petition for review.

DISCUSSION

■ In 1968, the Legislature enacted the CPRA "for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies. [Citation.]" (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425 [121 Cal.Rptr.2d 844, 49 P.3d 194].) This purpose is evident from the Act's very first provision, in which "the Legislature . . . declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250.) To implement this purpose, the Act provides that "[p]ublic records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereafter provided." (Gov. Code, § 6253, subd. (a).) The term "[p]ublic records" is broadly defined to "include . . . any writing containing information relating to the conduct of the

---

[3] Because the deputy sheriff withdrew the administrative appeal and settled the matter by stipulation without an appeal hearing, the Court of Appeal declined to decide whether the Commission may close such hearings to the public.

public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." (Gov. Code, § 6252, subd. (e).) The term " '[l]ocal agency' includes a county . . . or any board, commission or agency thereof." (Gov. Code, § 6252, subd. (a).) Under these definitions, the County of San Diego, the Commission and the San Diego County Sheriff's Department are all local agencies under the CPRA and the requested records all appear to qualify as public records; the parties do not contend otherwise.[4]

■ The right of access to public records under the CPRA is not absolute. In enacting the CPRA, the Legislature, although recognizing this right, also expressly declared that it was "mindful of the right of individuals to privacy." (Gov. Code, § 6250.) Thus, the express policy declaration at the beginning of the Act "bespeaks legislative concern for individual privacy as well as disclosure." (*Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645, 652 [117 Cal.Rptr. 106] (*Kehoe*).) "In the spirit of this declaration, judicial decisions interpreting the Act seek to balance the public right to access to information, the government's need, or lack of need, to preserve confidentiality, and the individual's right to privacy. [Citations.]" (*American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 447 [186 Cal.Rptr. 235, 651 P.2d 822].)

■ "The same dual concern" for privacy and disclosure the Legislature stated in Government Code section 6250 "appears throughout the [A]ct." (*Kehoe, supra*, 42 Cal.App.3d at p. 652.) As noted above, Government Code section 6253, subdivision (a), provides for the inspection of public records "except as hereafter provided." In the provisions that follow, the Act states a number of exemptions that permit government agencies to refuse to disclose certain public records. (Gov. Code, §§ 6254–6255.) "In large part, these exemptions are designed to protect the privacy of persons whose data or documents come into governmental possession." (*Kehoe, supra*, 42 Cal.App.3d at p. 652.) A qualifying agency refusing to disclose a public record must "justify" its decision "by demonstrating that the record . . . is exempt under" one of the CPRA's "express [exemption] provisions . . . or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (Gov. Code, § 6255, subd. (a).)

The CPRA exemptions the Commission relied on here are in Government Code section 6254, subdivisions (c) and (k). We must decide whether either

---

[4] The Act's definition of a "[w]riting" appears to be broad enough to include a tape recording of a hearing. (See Gov. Code, § 6252, subd. (g) ["every . . . means of recording upon any tangible thing any form of communication"].)

of these exemptions justifies the Commission's decision to withhold certain records regarding the disciplinary appeal in this case.

█ Because the parties primarily discuss Government Code section 6254, subdivision (k), we turn first to that exemption, which applies to "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." As is evident from the statutory language, this exemption "is not an independent exemption. It merely incorporates other prohibitions established by law. [Citations.]" (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 656 [230 Cal.Rptr. 362, 725 P.2d 470].) In 1998, the Legislature added an article to the CPRA specifically "list[ing] and describ[ing]" over 500 statutes that provide disclosure exemptions through Government Code section 6254, subdivision (k). (Gov. Code, § 6275; see also *id.*, §§ 6276–6276.48.) Among the listed statutes are "[s]ections 832.7 and 832.8, Penal Code." (Gov. Code, § 6276.34.)

In relevant part, section 832.7, subdivision (a), provides that certain "[p]eace officer or custodial officer" records and "information obtained from these records[] are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." The statute applies to two categories of records. The first is "personnel records" (§ 832.7, subd. (a)), which section 832.8 defines as "any file maintained under [an officer's] name by his or her employing agency and containing records relating to," among other things, "[p]ersonal data" (§ 832.8, subd. (a)), "[e]mployee advancement, appraisal, or discipline" (§ 832.8, subd. (d)), and "[c]omplaints, or investigations of complaints, concerning an event or transaction in which he or she participated . . . and pertaining to the manner in which he or she performed his or her duties." (§ 832.8, subd. (e).) The second category of records to which section 832.7, subdivision (a), applies is "records maintained by any state or local agency pursuant to [s]ection 832.5." The latter statute requires "[e]ach department or agency in [California] that employs peace officers [to] establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies . . . ." (§ 832.5, subd. (a)(1).) It also requires that "[c]omplaints and any reports or findings relating to these complaints . . . be retained for a period of at least five years . . . either in the peace or custodial officer's general personnel file or in a separate file designated by the department or agency as provided by department or agency policy." (§ 832.5, subd. (b).) The " '[g]eneral personnel file' " is "the file maintained by the agency containing the primary records specific to each peace or custodial officer's employment, including evaluations, assignments, status changes, and imposed discipline." (§ 832.5, subd. (d)(1).)

For several reasons, Copley argues that section 832.7, subdivision (a), does not justify the Commission's refusal to disclose the appeal records. First, Copley argues that the statute applies only to a "criminal or civil proceeding" (§ 832.7, subd. (a)), and that the proceeding at issue here is neither; it is an "administrative" proceeding. Second, Copley argues that the statute applies only to records "kept by departments or agencies 'that employ peace officers' " or "maintained by the 'employing agency,' " and that the Commission "neither employ[s] peace officers, nor create[s] or maintain[s] . . . [s]ection 832.5 or [s]ection 832.8 records." Finally, Copley argues that it has both a constitutional and common law right of access to the records in question. For the reasons set forth below, we reject Copley's arguments.

### A. *Section 832.7 is not limited to criminal and civil proceedings.*

Copley's first argument—that section 832.7, subdivision (a), applies only to criminal and civil proceedings—is premised on the phrase in the statute providing that the specified information is "confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." In *Bradshaw v. City of Los Angeles* (1990) 221 Cal.App.3d 908, 916 [270 Cal.Rptr. 711] (*Bradshaw*), the court opined that the word "confidential" in this phrase "is in its context susceptible to two reasonable interpretations." On the one hand, because the word "is followed by the word 'and,' " it could signify "a separate, independent concept [that] makes the [specified] records privileged material." (*Ibid.*) "On the other hand," the word could also be viewed as merely "descriptive and prefatory to the specific legislative dictate [that immediately] follows," in which case it could mean that the specified records "are confidential only in" the context of a " 'criminal or civil proceeding.' " (*Ibid.*) The *Bradshaw* court adopted the latter interpretation, concluding that the statute affords confidentiality only in criminal and civil proceedings, and not in "an administrative hearing" involving disciplinary action against a police officer. (*Id.* at p. 921.)

We reject Copley's argument because, like every appellate court to address the issue in a subsequently published opinion, we disagree with *Bradshaw*'s conclusion that section 832.7 applies only in criminal and civil proceedings.[5] When faced with a question of statutory interpretation, we look first to the language of the statute. (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) In interpreting that language, we strive to give effect and significance to every word and phrase. (*Garcia v.*

---

[5] See *Davis v. City of San Diego* (2003) 106 Cal.App.4th 893, 901–902 [31 Cal.Rptr.2d 266]; *SDPOA, supra,* 104 Cal.App.4th at pages 281–288; *Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419, 426 [98 Cal.Rptr.2d 144]; *City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1425–1430 [44 Cal.Rptr.2d 532] (*Hemet*); *City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1439–1440 [38 Cal.Rptr.2d 632] (*Richmond*).

*McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) If, in passing section 832.7, the Legislature had intended "only to define procedures for disclosure in criminal and civil proceedings, it could have done so by stating that the records 'shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code . . . ,' without also designating the information 'confidential.' (Pen. Code, § 832.7, subd. (a).)" (*Richmond, supra,* 32 Cal.App.4th at p. 1439; see also *SDPOA, supra,* 104 Cal.App.4th at p. 284.) Thus, by interpreting the word "confidential" (§ 832.7, subd. (a)) as "establish[ing] a general condition of confidentiality" (*Hemet, supra,* 37 Cal.App.4th at p. 1427), and interpreting the phrase "shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code" (Pen. Code, § 832.7, subd. (a)) as "creat[ing] a *limited exception* to the general principle of confidentiality," we "give[] meaning to both clauses" of the provision in question. (*Hemet, supra,* 37 Cal.App.4th at p. 1427.)

Other subdivisions of section 832.7 support this interpretation. (See *SDPOA, supra,* 104 Cal.App.4th at p. 284.) Section 832.7, subdivision (c), provides that "[n]otwithstanding subdivision (a), a department or agency that employs peace or custodial officers may disseminate data regarding the number, type, or disposition of complaints . . . made against its officers if that information is in a form which does not identify the individuals involved." Section 832.7, subdivision (d), provides: "Notwithstanding subdivision (a), a department or agency that employs peace or custodial officers may release factual information concerning a disciplinary investigation if the officer who is the subject of the disciplinary investigation, or the officer's agent or representative, publicly makes a statement he or she knows to be false concerning the investigation or the imposition of disciplinary action. . . . Disclosure of factual information by the employing agency pursuant to this subdivision is limited to facts contained in the officer's personnel file concerning the disciplinary investigation or imposition of disciplinary action that specifically refute the false statements made public by the peace or custodial officer or his or her agent or representative." These provisions, which specify circumstances under which information may be released to the general public and the scope of information that may be released, would be unnecessary if, as *Bradshaw* concluded, confidentiality under section 832.7, subdivision (a), extends only to civil and criminal proceedings and a public agency is free to release information to the general public under the CPRA. "Well-established canons of statutory construction preclude a construction [that] renders a part of a statute meaningless or inoperative." (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [41 Cal.Rptr.2d 220, 895 P.2d 56]; cf. *McClatchy Newspapers v. Superior Court* (1988) 44 Cal.3d 1162, 1181–1182 [245 Cal.Rptr. 774, 751 P.2d 1329] (*McClatchy*)

[statute authorizing grand jury to release materials only to succeeding grand jury is "most compelling indication that the Legislature has not authorized disclosure of [those] materials to the public"].)

■ Finally, *Bradshaw*'s narrow interpretation of section 832.7 would largely defeat the Legislature's purpose in enacting the provision. "[T]here is little point in protecting information from disclosure in connection with criminal and civil proceedings if the same information can be obtained routinely under CPRA." (*Richmond, supra,* 32 Cal.App.4th at p. 1440.) Thus, "it would be unreasonable to assume the Legislature intended to put strict limits on the discovery of police personnel records in the context of civil and criminal discovery, and then to broadly permit any member of the public to easily obtain those records" through the CPRA. (*SDPOA, supra,* 104 Cal.App.4th at p. 284.) "Section 832.7's protection would be wholly illusory unless [we read] that statute . . . to establish confidentiality status for [the specified] records" beyond criminal and civil proceedings. (*SDPOA, supra,* at p. 284.) We cannot conclude the Legislature intended to enable third parties, by invoking the CPRA, so easily to circumvent the privacy protection granted under section 832.7.[6] We therefore reject Copley's argument that section 832.7 does not apply beyond criminal and civil proceedings, and we disapprove *Bradshaw v. City of Los Angeles, supra,* 221 Cal.App.3d 908, to the extent it is inconsistent with this conclusion.

> B. *Commission records of disciplinary appeals, including the officer's name, are protected under section 832.7.*

As noted above, Copley asserts that the Commission's records are not protected under section 832.7, subdivision (a), because they are neither "personnel records" nor "records maintained by any state or local agency pursuant to Section 832.5." (§ 832.7, subd. (a).) For the reasons set forth below, we disagree.

Copley's view that the Commission's records do not qualify under section 832.7, subdivision (a), as "personnel records," which the Court of Appeal adopted,[7] is premised on section 832.8. As noted above, that section provides that "[a]s used in [s]ection 832.7, 'personnel records' means any file maintained under [an officer's] name by his or her employing agency and containing records relating to" specified matters, including "discipline" and

---

[6] Nor can we conclude the Legislature intended to grant the general public greater access to this information than it granted litigants in civil and criminal proceedings, which would be the result of adopting *Bradshaw*'s conclusion.

[7] The Court of Appeal did not expressly state that the Commission's records do not qualify as records maintained by the employing agency. However, that conclusion is implicit in the court's analysis and conclusion.

"[c]omplaints, or investigations of complaints, concerning an event or transaction in which [the officer] participated . . . and pertaining to the manner in which he or she performed his or her duties." (§ 832.8, subds. (d) & (e).) Copley asserts that the Commission's records do not meet this definition because the Commission does not "employ peace officers" and, therefore, the file it maintains regarding a peace officer's disciplinary appeal is not a file "maintained . . . by [the officer's] employing agency." (§ 832.8.)

■ Copley's argument fails to take into account the nature of the Commission and its role in disciplinary proceedings for peace officers in San Diego County. Government Code section 3304, subdivision (b), which is part of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) (POBRA), prohibits a "public agency" from taking "punitive action . . . against any [nonprobationary] public safety officer . . . without providing the public safety officer with an opportunity for administrative appeal." We have explained that this provision sets forth one of the "basic rights" that "must be accorded individual public safety officers *by the public agencies which employ them.*" (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 679 [183 Cal.Rptr. 520, 646 P.2d 191] (*White*), italics added; see also *Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 569 [273 Cal.Rptr. 584, 797 P.2d 608] [POBRA "sets forth the basic rights that law enforcement agencies must provide to their peace officer employees"]; *Baggett v. Gates* (1982) 32 Cal.3d 128, 138 [185 Cal.Rptr. 232, 649 P.2d 874] [statute "require[s] the city to provide peace officers 'an opportunity for administrative appeal' "].) As described by our Courts of Appeal, the "purpose" of this provision is, in part, to give a peace officer "an opportunity . . . 'to convince *the employing agency* to reverse its decision' " to take punitive action. (*Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1806 [20 Cal.Rptr.2d 903] (*Binkley*), italics added, quoting *Browning v. Block* (1985) 175 Cal.App.3d 423, 430 [220 Cal.Rptr. 763]; see also *Riveros v. City of Los Angeles* (1996) 41 Cal.App.4th 1342, 1359 [49 Cal.Rptr.2d 238] [appeal under Gov. Code, § 3304, gives peace officer "a chance to . . . try to convince his employer to reverse its decision"].)

■ In San Diego County, this statutory duty is satisfied by offering peace officers administrative appeals through the Commission, which is established by the San Diego County Charter (Charter) as a department of the County. (Charter, §§ 106, 903.) The Charter designates the Commission as "the administrative appeals body for the County in personnel matters authorized by this Charter." (Charter, § 904.1.) This "appellate authority includes appeals from actions involving [¶] discipline of classified employees with permanent status" and "charges filed by a citizen against a person in the classified status." (*Id.*, § 904.2.) The Charter authorizes the Commission to "affirm, revoke or modify any disciplinary order, and . . . make any appropriate orders in connection with appeals under its jurisdiction," and specifies that "[t]he

Commission's decisions shall be final, and shall be followed by the County unless overturned by the courts on appeal." (*Id.*, § 904.1.) Because the Commission, a department of the County, has been designated to provide the appeal that the officer's employer is required by law to provide in connection with taking punitive action, it is reasonable to conclude that for purposes of applying the relevant statutes in this case, the Commission is functioning as part of "the employing agency" and that any file it maintains regarding a peace officer's disciplinary appeal constitutes a file "maintained . . . by [the officer's] employing agency" within the meaning of section 832.8.

 The operative statutory language viewed in the context of the entire statutory scheme supports this conclusion. Although the relevant statutes do not define the term "employing agency" for purposes of applying section 832.8, section 832.5 offers assistance in determining the term's scope. As noted above, section 832.5 addresses "complaints by members of the public against the personnel of" any California "department or agency . . . that employs peace officers." (§ 832.5, subd. (a)(1).) As also noted above, it requires that "[c]omplaints and any reports or findings relating to these complaints . . . be retained for a period of at least five years . . . either in the peace or custodial officer's general personnel file or in a separate file designated by the department or agency as provided by department or agency policy." (§ 832.5, subd. (b).) As especially relevant here, the statute provides that complaints "determined by the peace . . . officer's *employing agency* to be frivolous . . . or unfounded or exonerated . . . shall not be maintained in that officer's general personnel file" (§ 832.5, subd. (c), italics added), and "shall be removed from" that file "prior to any official determination regarding promotion, transfer, or disciplinary action." (§ 832.5, subd. (b).) The Legislature passed these provisions to " 'ensure that [peace officers] are not penalized by false charges languishing in their personnel files.' " (Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 3434 (1995–1996 Reg. Sess.) as amended May 14, 1996, p. 2.) Under Copley's interpretation, this protection would not be triggered by a *Commission* determination on appeal that a complaint is frivolous, unfounded, or exonerated, because the Commission, although the County department designated to provide the final, statutorily required step in the administrative disciplinary process, is not the "employing agency." (§ 832.5, subd. (c).) This interpretation would be neither reasonable nor consistent with the Legislature's intent. Thus, reasonably understood, the term "employing agency" as used in section 832.5, subdivision (c), includes the Commission insofar as it hears disciplinary appeals. Under settled principles of statutory interpretation, it is appropriate to give that term the same meaning in applying section 832.8.[8] (See *Walker v.*

---

[8] The dissent, which would adopt Copley's construction, errs in suggesting that our analysis rests on "speculation that a law enforcement agency would (or could) disregard the Commission's decision on appeal." (Dis. opn., *post*, at p. 1309.) Like the dissent, we presume that a

*Superior Court* (1988) 47 Cal.3d 112, 132 [253 Cal.Rptr. 1, 763 P.2d 852] ["Identical language appearing in separate provisions dealing with the same subject matter should be accorded the same interpretation"]; *County of Placer v. Aetna Cas. etc. Co.* (1958) 50 Cal.2d 182, 188–189 [323 P.2d 753] ["statutes relating to the same subject matter are to be construed together and harmonized if possible"].)

In arguing for a contrary interpretation, Copley unpersuasively cites *Civil Service Com. v. Superior Court* (1984) 163 Cal.App.3d 70 [209 Cal.Rptr. 159] (*CSC*). Specifically, Copley relies on that decision's characterization of the Commission "as a 'quasi-independent' county agency." (*Id.* at p. 77.) However, "the term 'quasi' is used in legal phraseology 'to indicate that one subject resembles another . . . in certain characteristics, but that there are intrinsic and material differences between them.' [Citation.]" (*In re McNeill* (Bankr. E.D.N.Y. 1996) 193 B.R. 654, 661.) In other words, it "presupposes both resemblance *and difference*." (*Wiseman v. Calvert* (1950) 134 W.Va. 303 [59 S.E.2d 445, 454], italics added.) Thus, *CSC*'s characterization of the Commission as a " 'quasi-independent' county agency" (*CSC, supra,* at p. 77) does not establish that the Commission is an independent body for all purposes.[9] (Cf. *People v. Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 438–439 [119 Cal.Rptr. 193, 531 P.2d 761] [grand jury enjoys "full independence of action," but is " 'part of the court by which it is convened' " and " 'under the control of the court' "]; *Johnson v. Fontana County F.P. Dist.* (1940) 15 Cal.2d 380, 391 [101 P.2d 1092] [" ' "generally a political subdivision and the officers, boards, commissions, agents and representatives thereof form but a single entity" ' "].) The *CSC* court made this characterization in determining whether county counsel, in advising the Commission, had "an attorney-client relationship" with the Commission "separate and distinct from county counsel's fundamental relationship with the County," such that county

---

County law enforcement agency would abide by an unappealed decision of the Commission, as the Charter requires. (Charter, § 904.1.) However, under the dissent's view that the Commission is not acting as part of the employing agency, the fact that a law enforcement agency *abides by* a Commission decision does not transform that decision into a "determin[ation] by the peace . . . officer's employing agency . . . ." (§ 832.5, subd. (c).) Thus, under the plain language of the relevant statute, the law enforcement agency would not be *required* to remove from officers' personnel files complaints the Commission finds to be frivolous, unfounded, or exonerated, and could abide by the Commission's decision without doing so. Whether a local agency would *choose* to remove such complaints is a separate question. Thus, the dissent's construction would strip many peace officers of the assurance and protection the Legislature sought to guarantee.

[9] As already noted, under the County Charter, the Commission is a department of the County. (Charter, §§ 106, 903.) Moreover, each member is appointed by the County's Board of Supervisors (Charter, § 903) and "may be removed by a majority vote of the Board if the Board serves the Commissioner [with] a written statement containing the reasons for removal, records the statement in its minutes, and allows the commissioner an opportunity to be heard publicly." (*Id.*, § 903.2.)

counsel could not represent the county in the county's lawsuit against the Commission. (*CSC, supra,* at p. 77.) Thus, the considerations that informed that court's decision were far different from the considerations at issue here in determining whether the file of an administrative disciplinary appeal provided by a peace officer's employer through the Commission is a "file maintained . . . by [the officer's] employing agency" within the meaning of section 832.8. Given these differences, Copley's reliance on *CSC* is unavailing.[10]

■ For several reasons, Copley's argument that the Commission's records cannot qualify as "records maintained by any state or local agency pursuant to [s]ection 832.5" (§ 832.7, subd. (a)) also fails.[11] Copley asserts that only records kept by departments or agencies that employ peace officers are "maintained . . . pursuant to [s]ection 832.5" (§ 832.7, subd. (a)), and that the Commission's records do not meet this criterion because the Commission does not employ peace officers. However, the preceding analysis regarding sections 832.7 and 832.8 also supports the conclusion that for purposes of applying section 832.5, the Commission, in hearing disciplinary appeals, is functioning as part of a department or agency that employs peace officers and that any records it maintains regarding such appeals are being maintained by such a department or agency.

In any event, the statutory language does not support Copley's assertion (which the dissent erroneously repeats (dis. opn., *post,* at p. 1308)), that only records kept by departments or agencies that employ peace officers are "maintained . . . pursuant to [s]ection 832.5." (§ 832.7, subd. (a).) Section 832.5 requires "[e]ach [California] department or agency . . . that employs peace officers [to] establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies" (§ 832.5,

---

[10] At oral argument, Copley asserted that both Government Code section 3304 and the Charter require administrative appeals to be conducted by a "neutral factfinder," and that it is "illogical" to characterize the Commission as both neutral and, at the same time, part of the employing agency. Without commenting on the former assertion, we note that the latter is inconsistent with California case law. (See *Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 178–179 [125 Cal.Rptr.2d 474] (*Brown*) [regulation requiring that hearing officer for administrative disciplinary appeal be selected from members of police department satisfies due process]; *Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123, 1142 [73 Cal.Rptr.2d 695] [medical center's board of directors is "impartial adjudicator" for administrative appeal notwithstanding that its administrator "initiated" physician's suspension and its "risk management staff prosecuted the action"]; *Stanton v. City of West Sacramento* (1991) 226 Cal.App.3d 1438, 1443 [277 Cal.Rptr. 478] (*Stanton*) [police chief hearing administrative appeal of discipline imposed by another officer is " ' "a reasonably impartial, noninvolved reviewer" ' "]; *Doyle v. City of Chino* (1981) 117 Cal.App.3d 673, 681–682 [172 Cal.Rptr. 844] [city council hearing police chief's administrative appeal of termination decision made by city manager " 'was an impartial body' "].)

[11] As noted above, section 832.5 deals with "complaints by members of the public against" peace officers. (§ 832.5, subd. (a)(1).) The record does not disclose whether this case involves such a complaint. As explained, the result would be the same in any event.

subd. (a)(1)), and directs that "[c]omplaints [by members of the public] and any reports or findings relating to these complaints shall be retained for a period of at least five years." (*Id.*, subd. (b).) It does *not*, however, specify the entity that must maintain these records. Moreover, it *does* expressly specify that "complaints retained pursuant to [the statute] may be maintained . . . in a separate file designated by the department or agency . . . . " (*Ibid.*) In light of these provisions, it is reasonable to conclude that because the Commission has been designated to hear disciplinary appeals, its records qualify under section 832.7, subdivision (a), as "records maintained by any state or local agency pursuant to Section 832.5."[12] (See *San Francisco Police Officers' Assn. v. Superior Court* (1988) 202 Cal.App.3d 183, 190 [248 Cal.Rptr. 297] (*SFPOA*) ["the Legislature, in mandating the establishment of appropriate mechanisms for the investigation of citizens' complaints, has relegated the format and operating procedures to the authority of each local agency, so long as the complaints and related findings are kept confidential and maintained for a minimum period of five years"].)

 To the extent this examination of the statutory language leaves uncertainty, it is appropriate to consider "the consequences that will flow from a particular interpretation. [Citation.]" (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165 [278 Cal.Rptr. 614, 805 P.2d 873] (*Harris*).) Where more than one statutory construction is arguably possible, our "policy has long been to favor the construction that leads to the more reasonable result. [Citation.]" (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 343 [250 Cal.Rptr. 268, 758 P.2d 596].) This policy derives largely from the presumption that the Legislature intends reasonable results consistent with its apparent purpose. (*Harris*, *supra*, at pp. 1165–1166.) Thus, our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]; *People v. Simon* (1995) 9 Cal.4th 493, 517 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *Fields v. Eu* (1976) 18 Cal.3d 322, 328 [134 Cal.Rptr. 367, 556 P.2d 729].) We will not adopt "[a] narrow or restricted meaning" of statutory language "if it would result in an evasion of the evident purpose of [a statute], when a permissible, but broader, meaning

---

[12] Contrary to the dissent's assertion, the meaning of the phrase "maintained . . . by [the officer's] employing agency" in section 832.8 is not, either alone or in context, so "plain" (dis. opn., *post*, at p. 1309) as to exclude records maintained by a County department that has been designated to hear appeals that the County must, by law, provide. Nor does the dissent identify any language in section 832.5 that has that "plain meaning." (Dis. opn., *post*, at p. 1309.) On the contrary, the dissent's view of section 832.5 is based on what it finds "apparent" from the language of the section's various subdivisions "[c]onsider[ed] . . . together." (Dis. opn., *post*, at p. 1308.)

would prevent the evasion and carry out that purpose." (*In re Reineger* (1920) 184 Cal. 97, 103 [193 P. 81].)

Regarding these considerations, it is significant that under Copley's interpretation, the extent of confidentiality available to peace officers would turn on several fortuities: the entity hearing an appeal and the timing of the request. As to the former, although the law requires a "public agency" to provide nonprobationary peace officers with "an opportunity for administrative appeal" in connection with taking "punitive action" (Gov. Code, § 3304, subd. (b)), it also expressly gives "local public agenc[ies]" discretion to determine "rules and procedures" for these "administrative appeal[s]."[13] (Gov. Code, § 3304.5; see *Binkley, supra*, 16 Cal.App.4th at p. 1806 ["details" of required appeal "are left to be formulated by the local agency"].) In San Diego County, this statutory discretion has been exercised by designating the Commission to hear administrative appeals. However, other local agencies at various times have designated individuals within the law enforcement department to hear such appeals. (See *Brown, supra*, 102 Cal.App.4th at p. 173 ["a member of the Department of the rank of captain through deputy chief"]; *Riveros v. City of Los Angeles, supra*, 41 Cal.App.4th at pp. 1358–1361 [hearing officer was captain in the department, with chief retaining final decision]; *Stanton, supra*, 226 Cal.App.3d at p. 1440 [" 'Chief of Police' "]; *Holcomb v. City of Los Angeles* (1989) 210 Cal.App.3d 1560, 1562 [259 Cal.Rptr. 1] ["board of rights" consisting of "two watch commanders and one captain from the LAPD"].) Under Copley's interpretation, the record of the officer's appeal in this case is unprotected only because in San Diego County, the Commission has been designated to hear the administrative appeal the law requires the officer's employer to provide; if the officer worked in a jurisdiction where administrative appeals are heard within the law enforcement agency, then the records of that appeal would be protected. (Cf. *SFPOA, supra*, 202 Cal.App.3d at p. 191 [tape recording of hearing before office of citizen complaints is a "confidential record[] disclosure of which is expressly governed by the statutory scheme"].)

As for timing, Copley's interpretation would yield inconsistent results regarding disclosure of identical records, depending on when the disclosure request is made. As noted above, section 832.5, subdivision (b), *requires* that "[c]omplaints [by members of the public against peace officers] and any reports or findings relating to these complaints . . . be retained for a period of at least five years." If, as Copley contends, the Commission's records are not "maintained . . . pursuant to [s]ection 832.5" within the meaning of section 832.7, subdivision (a), then the Commission's retention of its own reports and

---

[13] Of course, discretion must be exercised consistent with any constitutional and statutory limitations. (Cf. *SFPOA, supra*, 202 Cal.App.3d at p. 190.)

findings would not satisfy the requirements of section 832.5 and the employing agency or department itself would be required by law to retain copies of those reports and findings in its own files for at least five years. The copies of the Commission's reports and findings in the employing agency's files would, under the express language of section 832.7, subdivision (a), be "records maintained . . . pursuant to [s]ection 832.5" and would be "confidential." However, because those same reports and findings in the Commission's own files would not be "maintained . . . pursuant to [s]ection 832.5" (§ 832.7, subd. (a)), they would not be confidential and would have to be disclosed unless they were destroyed before filing of a disclosure request (or some other CPRA exception applied).[14] Thus, under Copley's interpretation, disclosure would depend, fortuitously, on whether a disclosure request is made to the Commission before or after it destroys its records.[15]

---

[14] Under Copley's interpretation, because the Commission's records are not "maintained . . . pursuant to [s]ection 832.5" (§ 832.7, subd. (a)), the five-year retention requirement of section 832.5, subdivision (b), would not apply to them. Thus, nothing would prevent the Commission from destroying its records immediately after completing an appeal.

[15] The dissent's assertion that under its construction, copies of Commission reports and findings kept by the sheriff's department would not be confidential (dis. opn., *post*, at pp. 1311–1312), is inconsistent with the plain language of section 832.5, subdivision (b), which requires that "any reports or findings relating to" citizen complaints be retained for at least five years, and of section 832.7, subdivision (a), which specifies that "records maintained by any state agency pursuant to [s]ection 832.5 . . . are confidential . . . ." It is also inconsistent with our decision in *Williams v. Superior Court* (1993) 5 Cal.4th 337 [19 Cal.Rptr.2d 882, 852 P.2d 377] (*Williams*), on which the dissent erroneously relies. (Dis. opn., *post*, at p. 1311.) There, in construing the CPRA exception for certain "investigatory or security files" (Gov. Code, § 6254, subd. (f)), we explained that "nonexempt materials"—i.e., those "not on their face exempt from disclosure" under the CPRA—"nevertheless become exempt through inclusion in an investigatory file. [Citations.]" (*Williams, supra*, at pp. 354–355.) Thus, contrary to the dissent's analysis, *Williams* actually *supports* the view that an agency may refuse to disclose an otherwise "disclosable document" that it has properly "plac[ed]" in a file that is protected from disclosure. (Dis. opn., *post*, at p. 1311.) Therefore, if, as the dissent argues, the Commission's files are not confidential under Penal Code section 832.7 because they are not maintained by the employing agency pursuant to Penal Code section 832.5, then copies of the Commission's reports and findings nevertheless become confidential when, as section 832.5, subdivision (b), requires, they are properly placed in the employing agency's files.

As the dissent observes (dis. opn., *post*, at p. 1311), we also explained in *Williams* that a public agency cannot make the CPRA exemption for investigatory files applicable to a particular record "simply by placing it in a file labeled 'investigatory' " (*Williams, supra*, 5 Cal.4th at p. 355); the file can properly be called investigatory only if the "prospect of enforcement proceedings" is "concrete and definite," and the record in question must "properly belong in the file" because it "relate[s] to the investigation." (*Id.* at p. 362.) Contrary to the dissent's analysis, this discussion is completely consistent with the view that copies of Commission reports and findings that the employing agency is properly maintaining as required by section 832.5, subdivision (b), are confidential under section 832.7, subdivision (a).

The dissent's reliance on *New York Times Co. v. Superior Court* (1997) 52 Cal.App.4th 97 [60 Cal.Rptr.2d 410] (*New York Times*) is similarly misplaced. There, a news agency filed a CPRA request, not for disclosure of records, but for information: the names of deputy sheriffs who

Given these consequences, we cannot say that adopting Copley's interpretation would produce reasonable results that most closely comport with the Legislature's apparent intent. The statutes disclose a legislative intent both to *require* retention of "*any* reports or findings" generated as part of an agency's procedure for investigating citizen complaints against peace officers (§ 832.5, subd. (b), italics added) and to make records "maintained by *any* state or local agency pursuant to" this requirement "confidential." (§ 832.7, subd. (a), italics added; see *SFPOA, supra,* 202 Cal.App.3d at p. 190 [statutes "evidence[]" legislative "purpose to provide retention of relevant records while imposing limitations upon their discovery and dissemination"].) Copley's interpretation produces results inconsistent with this intent, by stripping the Commission's reports and findings of confidentiality, at least so long as the Commission retains copies of them. Nothing in the legislative history suggests a legislative intent to create the confidentiality exception Copley asserts.

Moreover, it is doubtful the Legislature intended to make the extent of confidentiality available to a peace officer turn on whether he or she works in a jurisdiction where responsibility for administrative appeals has been assigned to someone outside the law enforcement department. In enacting section 832.7, the Legislature did not *directly* give a local agency discretion to release records of disciplinary appeals. Thus, although a particular local agency might have good reasons for wanting to grant public access to disciplinary records regarding peace officers, in jurisdictions where all aspects of disciplinary matters and citizen complaints—including appeals—are handled *within* the law enforcement department, the statutes do not give the employing agency discretion to disclose disciplinary records without consent of the involved peace officer. It is unlikely the Legislature, in declining to confer this discretion directly, nevertheless intended to allow an officer's employer to exercise such discretion *indirectly*, by designating someone outside the agency to hear these matters.[16] Of course, some jurisdictions may

---

fired weapons during an incident. (*Id.* at p. 99.) The sheriff's department argued that the information was protected from disclosure by the CPRA exemption for "personnel . . . files." (Gov. Code, § 6254, subd. (c).) The court disagreed, explaining that although the information could be found, among other places, in the officers' personnel files, it could "be readily provided . . . without disclosure of any portion of the deputies' personnel files." (*New York Times, supra,* 52 Cal.App.4th at pp. 103–104, fn. omitted.) The court reasoned that the names of the officers, which was "otherwise . . . unrestricted information," did not become exempt from disclosure merely by being "plac[ed] into a personnel file . . . ." (*Id.* at p. 103.) This reasoning, even if correct, has no application here, because section 832.7, subdivision (a), protects both the specified records *and* "information obtained from [those] records." Nor does *New York Times* stand for the proposition that records within a public agency's possession lose protection to which they are otherwise entitled merely because they were, at some time, available from some other source.

[16] Logically, Copley's interpretation would not apply only to records of an administrative appeal. Under Copley's analysis, records relating to any part of a disciplinary matter handled outside the law enforcement department would not be confidential within the meaning of section 832.7.

assign responsibility for such matters to persons outside the agency for reasons unrelated to—and without considering the implications for—public disclosure. Again, it is unlikely the Legislature, which went to great effort to ensure that records of such matters would be confidential and subject to disclosure under very limited circumstances, intended that such protection would be lost as an inadvertent or incidental consequence of a local agency's decision, for reasons unrelated to public disclosure, to designate someone outside the agency to hear such matters. Nor is it likely the Legislature intended to make loss of confidentiality a factor that influences this decision.

Having reviewed the statutory language and the legislative history, we find no evidence the Legislature intended that one officer's privacy rights would be less protected than another's simply because his or her employer, for whatever reason, conducts administrative appeals using an entity like the Commission. In enacting section 832.7, the Legislature appears to have made a statewide decision regarding confidentiality of such records, and has expressly specified the circumstances where a local agency "may"—i.e., has discretion to—release very limited information from those records. (§ 832.7, subds. (c), (d).) Nothing suggests the Legislature intended to leave it up to local departments and agencies, through the mechanism chosen for handling these matters, to determine—either intentionally or by accident—how much, if any, protection to afford peace officers. Nor does Copley even attempt to explain why the considerations that led the Legislature to enact Penal Code section 832.7, and later expressly to recognize this statute as a CPRA exception (Gov. Code, § 6276.34), apply differently depending on whether a disciplinary matter is handled inside or outside the law enforcement agency.[17] In a prior case involving records made confidential by section 832.7, we explained that "[p]eace officers' privacy interests do not vary with the age of the accused who seeks personnel records." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 54 [19 Cal.Rptr.2d 73, 850 P.2d 621].) Nor do those interests vary with the relationship of the person hearing an administrative appeal to a peace officer's employer.[18]

---

[17] To the extent differences exist, there may be more justification for public disclosure where the matter is heard entirely within the law enforcement agency than where the appeal is heard by an entity like the Commission. Arguably, in the latter context, the public has more reason to trust the objectivity of the decision maker and, consequently, less need for disclosure.

[18] We do not, as the dissent asserts, "assume[]" that "the level of confidentiality" available "*must* be the same" for all peace officers. (Dis. opn., *post*, at p. 1310, italics added.) Rather, we note the disparity that exists under the dissent's construction because, as explained, it is relevant in determining the Legislature's intent, which is "the objective of statutory interpretation . . . ." (*People v. Flores* (2003) 30 Cal.4th 1059, 1063 [135 Cal.Rptr.2d 63, 69 P.3d 979].) We also do not, as the dissent suggests, believe that a local agency's desire to provide more public disclosure would be "unreasonable." (Dis. opn., *post*, at p. 1310.) We simply find—and the dissent offers—no evidence suggesting that the Legislature, which has precluded local

Adopting Copley's interpretation would also significantly impact a peace officer's right of administrative appeal under Government Code section 3304, subdivision (b). As noted above, that right is one of the "basic rights" a public employer must provide peace officers under the POBRA. (*White, supra,* 31 Cal.3d at p. 679.) Adopting Copley's interpretation would create a strong disincentive to exercising this basic statutory right in jurisdictions where appeals are heard by persons outside the law enforcement department. In such jurisdictions, in order to exercise this right, peace officers would have to give up much of their right of confidentiality under Penal Code section 832.7, subdivision (a). Thus, Copley's interpretation presents peace officers with a Hobson's choice between their right of confidentiality under Penal Code section 832.7 and their right of administrative appeal under Government Code section 3304.[19] There is no evidence the Legislature intended to give *local* agencies discretion to force peace officers to make such a choice. Nor is there evidence the Legislature intended that the basic statutory right of administrative appeal would effectively be less available in some jurisdictions than in others. (Cf. *Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20, 36, fn. 22 [81 L.Ed.2d 17, 104 S.Ct. 2199] [noting that individuals may " 'forgo the pursuit of their just claims' " to avoid " 'unwanted publicity,' " causing " 'frustration of [a valuable] right' "].) On the contrary, such a conclusion would be inconsistent with the Legislature's express declaration that a peace officer's rights under the POBRA—including the right of appeal—are "a matter of *statewide* concern" and must be available "to *all* public safety officers, . . . *wherever situated within the State of California.*" (Gov. Code, § 3301, italics added.) Citing this declaration, we have explained that statutory constructions making the opportunity for administrative appeal "more widely available" "accord . . . with the express purpose of the [POBRA]." (*White, supra,* 31 Cal.3d at p. 683.) Thus, from the perspective of both statutory language and practical consequences, Copley's narrow interpretation is not the more reasonable one, and would not produce reasonable results that most closely comport with the Legislature's apparent intent.[20]

---

agencies from implementing this desire directly, intended to permit them to do so indirectly, by designating an entity like the Commission to hear disciplinary appeals.

[19] A Hobson's choice is defined as, among other things, "the necessity of accepting one of two or more equally objectionable things." (Webster's 3d New Internat. Dict. (2002) p. 1076, col. 1.) In this sense, the dissent's construction, by forcing certain peace officers to give up either their right of appeal or their right of confidentiality, surely presents them with a Hobson's choice. The dissent errs in suggesting that our construction limits the options of peace officers who want their appeals heard by bodies "drawn from outside [their] immediate chain of command." (Dis. opn., *post,* at p. 1312.) Nothing in our opinion precludes peace officers from choosing such an appellate body if a local agency offers one.

[20] According to the dissent, under its construction, a peace officer who must choose between the right of appeal and the right of confidentiality is the same as any civil litigant seeking to vindicate legal rights in court. (Dis. opn., *post,* at pp. 1311–1312.) This assertion, even if correct, is beside the point. By statute, the Legislature has expressly provided peace officers

■ Insofar as the Court of Appeal specifically addressed disclosure of the deputy's identity, it erred in finding that this information is not confidential under section 832.7. ■ This conclusion derives largely from section 832.7, subdivision (c), which permits, "[n]otwithstanding subdivision (a)" of section 832.7, a department or agency that employs peace officers to disclose certain data regarding complaints against officers, but only "if that information is in a form which does not identify the individuals involved." The language limiting the information that may be disclosed under this exception demonstrates that section 832.7, subdivision (a), is designed to protect, among other things, "the identity of officers" subject to complaints. (*Richmond, supra,* 32 Cal.App.4th at p. 1440, fn. 3; cf. *Daily Journal Corp. v. Superior Court* (1999) 20 Cal.4th 1117, 1129 [86 Cal.Rptr.2d 623, 979 P.2d 982] [provision prohibiting disclosure of information that would identify grand jury witnesses "reaffirms the general legislative concern to safeguard grand jury secrecy"].) The legislative history of this provision confirms the Legislature's intent to "prohibit any information identifying the individuals involved from being released, in an effort to protect the personal rights of both citizens and officers." (Assem. Com. on Public Safety, Republican Analysis of Assem. Bill No. 2222 (1989–1990 Reg. Sess.) Sept. 2, 1989, p. 2; see also Assem. Com. on Ways & Means, Analysis of Assem. Bill No. 2222 (1989–1990 Reg. Sess.) as amended May 17, 1989 [exception allows release of summary data "as long as the information does not identify the officers involved"].) Given the statutory language and the legislative history, the Court of Appeal erred in ordering disclosure of the name of the deputy involved in this case.

In reaching this conclusion, we reject Copley's reliance on *New York Times, supra,* 52 Cal.App.4th 97. There, through a CPRA request, a news organization sought the names of deputy sheriffs who fired weapons during a criminal incident. (*New York Times,* at p. 100.) The county sheriff, who determined this information during an internal investigation of the incident, agreed to

---

with *both* rights, and the question here is whether the Legislature intended to make officers choose between those rights only if they happen to work for an agency that, for whatever reason, has designated a body like the Commission to hear appeals. Nothing suggests that such unequal treatment of peace officers would be consistent with the Legislature's intent.

The dissent errs in asserting that Government Code section 3304.5 evidences a legislative intent to allow such unequal treatment. (Dis. opn., *post,* at p. 1312.) That section, which provides that "administrative appeal[s] . . . shall be conducted in conformance with rules and procedures adopted by" local public agencies (Gov. Code, § 3304.5), does not authorize public agencies to adopt rules or procedures that abrogate the confidentiality legislatively established in Penal Code section 832.7. (Cf. *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1029 [130 Cal.Rptr.2d 662, 63 P.3d 220] [agencies may not adopt regulations that are inconsistent with statutes]; *SFPOA, supra,* 202 Cal.App.3d at p. 190.) Were that the case, even in a jurisdiction where disciplinary appeals are handled within the law enforcement department, nothing would prevent the local agency from providing disclosure notwithstanding Penal Code section 832.7. Even the dissent apparently would not go so far.

provide the names of *all* deputies who were present at the crime scene, but refused to identify the particular officers who fired their weapons. (*Id.* at pp. 99–100.) The court ordered disclosure of the information, holding in relevant part that it was not confidential under section 832.7. (*New York Times, supra,* at pp. 101–104.) Without any analysis, the court broadly declared that "[u]nder . . . sections 832.7 and 832.8, an individual's name is not exempt from disclosure." (*New York Times, supra,* at p. 101.) As the preceding discussion of the statutory language and legislative history demonstrates, the court's unsupported assertion is simply incorrect, at least insofar as it applies to disciplinary matters like the one at issue here. Thus, we disapprove *New York Times Co. v. Superior Court, supra,* 52 Cal.App.4th 97, to the extent it is inconsistent with the preceding discussion, and we reject Copley's reliance on that decision.

 Finally, Copley's appeal to policy considerations is unpersuasive. Copley insists that "public scrutiny of disciplined officers is vital to prevent the arbitrary exercise of official power by those who oversee law enforcement and to foster public confidence in the system, especially given the widespread concern about America's serious police misconduct problems." There are, of course, competing policy considerations that may favor confidentiality, such as protecting complainants and witnesses against recrimination or retaliation, protecting peace officers from publication of frivolous or unwarranted charges, and maintaining confidence in law enforcement agencies by avoiding premature disclosure of groundless claims of police misconduct. (Cf. *McClatchy, supra,* 44 Cal.3d at pp. 1173–1178 [discussing reasons for confidentiality in grand jury proceedings]; *Gubler v. Commission on Judicial Performance* (1984) 37 Cal.3d 27, 60 [207 Cal.Rptr. 171, 688 P.2d 551] [discussing judicial disciplinary matters].) In enacting and amending sections 832.5, 832.7, and 832.8, the Legislature, though presented with arguments similar to Copley's, made the policy decision "that the desirability of confidentiality in police personnel matters *does* outweigh the public interest in openness."[21] (*Hemet, supra,* 37 Cal.App.4th at p. 1428, fn. 18.) Copley

---

[21] The American Civil Liberties Union opposed the 1978 legislation that enacted sections 832.7 and 832.8 and amended section 832.5, arguing that the statutes would "seal[] . . . off" records regarding complaints against peace officers "forever." (Legis. Advocate Brent Barnhart, American Civil Liberties Union, letter to Sen. Dennis Carpenter, Mar. 30, 1978, regarding Sen. Bill No. 1436 (1977–1978 Reg. Sess.).) The California Attorneys for Criminal Justice opposed a 2000 amendment to section 832.7, arguing that it was "bad public policy" because it would "allow peace officers to avoid accountability for their misconduct." (Legis. Advocate Wendy Taylor, Cal. Attorneys for Criminal Justice, letter to Assem. Member Dennis Cardoza, May 11, 2000, regarding Assem. Bill No. 2559 (1999–2000 Reg. Sess.).) The California Public Defenders Association opposed amendments in 2002 to sections 832.5 and 832.7 that extended confidentiality to custodial officers, arguing that "greater public exposure affords greater protection to the public, by insuring greater accountability." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2040 (2001–2002 Reg. Sess.) as amended May 13, 2002, p. 10.)

fails to explain why the considerations underlying the Legislature's policy decision apply differently, depending on whether a part of a disciplinary matter that the officer's employer must, by statute, provide is handled inside or outside the law enforcement department itself. In any event, it is for the Legislature to weigh the competing policy considerations. As one Court of Appeal has explained in rejecting a similar policy argument: "[O]ur decision . . . cannot be based on such generalized public policy notions. As a judicial body, . . . our role [is] to interpret the laws as they are written."[22] (*SDPOA, supra,* 104 Cal.App.4th at p. 287.)

### C. *Common law and constitutional considerations do not support Copley's interpretation.*

As noted above, Copley argues in part that it has both a common law and constitutional right of access to the records in question. Copley's constitutional argument amounts to a claim that section 832.7 is unconstitutional insofar as it permits nondisclosure of the records in question. For the reasons stated below, we reject these arguments.[23]

---

[22] We thus agree with the dissent that "it is for the Legislature . . . to make the policy decision" regarding confidentiality. (Dis. opn., *post,* at p. 1314.) The dissent errs, however, in asserting that by adopting the construction we find to be reasonable, we are improperly "imposing" our "own view of" what public policy should be. (*Id.* at p. 1314.) Our decisions have long recognized that a court's "overriding purpose" in construing a statute is "to give the statute a *reasonable* construction conforming to [the Legislature's] intent [citation], keeping in mind that 'the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible' [citation]." (*Massey v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 674, 681 [20 Cal.Rptr.2d 825, 854 P.2d 117], italics added.) Indeed, the dissent's criticisms—and its overall analytical approach—are inconsistent with an opinion the dissent's author wrote for a majority of this court just last year. In *In re Reeves* (2005) 35 Cal.4th 765 [28 Cal.Rptr.3d 4, 110 P.3d 1218], after finding "ambiguities" in "seemingly plain [statutory] language" (*id.* at p. 770), the majority "search[ed] for a reasonable construction" of the statute at issue, explaining that "[w]hen a statute is capable of more than one construction, ' "[w]e *must* . . . give the provision a *reasonable* and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, *practical rather than technical in nature,* which upon application will result in wise policy rather than mischief or absurdity." ' [Citations.]" (*Id.* at p. 771 & fn. 9, italics added.) Our analysis, unlike the dissent's, is completely consistent with this approach.

[23] Copley made these arguments in its petition for writ of mandate, but the Court of Appeal did not address them in its opinion. Copley did not bring this omission to the Court of Appeal's attention by filing a petition for rehearing, notwithstanding the court's holding that some of the requested records are confidential under section 832.7 and are not subject to disclosure under the CPRA. Nor did Copley file either a petition for review in this court or an answer to interveners' petition for review, which did not mention common law or constitutional issues and raised only the statutory question of whether "the identity of a disciplined officer and appeal records regarding that disciplinary action, requested from a Civil Service Commission" should "be provided pursuant to a request under" the CPRA. Under these circumstances, we could properly decline to decide these issues. (See *Barratt American, Inc. v.*

 Copley's common law argument fails under well-established principles. As we have explained, "[t]he common law is only one of the forms of law and is no more sacred than any other. . . . [I]t may be changed at the will of the [L]egislature, unless prevented by constitutional limitations." (*People v. Hickman* (1928) 204 Cal. 470, 479.) Thus, "we may consider common law practices . . . only if they are not superseded by or in conflict with constitutional or statutory provisions. [Citation.]" (*People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 157 [172 Cal.Rptr. 478, 624 P.2d 1206].) Indeed, the only California authority Copley cites in support of its argument recognizes that the common law right to inspect public records does not apply where "a specific exception makes specific records nonpublic. [Citation.]" (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 782 [136 Cal.Rptr. 821].) Here, as explained above, the Legislature has enacted a specific statute that makes the records in question "confidential." (Pen. Code, § 832.7, subd. (a); see also Gov. Code, §§ 6275, 6276, 6276.34 [Pen. Code, § 832.7 constitutes CPRA exemption pursuant to Gov. Code, § 6254, subd. (k)].) Given this statute, the common law, even if it is as Copley asserts, does not govern this case.[24]

 Copley's argument under the California Constitution fails for a similar reason. Copley relies on article I, section 3, subdivision (b)(1), of the California Constitution, which provides: "The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." However, subdivision (b)(3) of the same section provides in relevant part that "[n]othing in this subdivision . . . affects the construction of any statute . . . to the extent that it protects th[e] right to privacy" guaranteed by article I, section 1 of the California Constitution, "including any statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer." (Cal. Const., art. I, § 3, subd. (b)(3).) One of section 832.7's purposes is "to protect the right of privacy of peace officers." (71 Ops.Cal.Atty.Gen. 247, 249 (1988); see also *People v. Mooc* (2001) 26 Cal.4th

---

*City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 700, fn. 3 [37 Cal.Rptr.3d 149, 124 P.3d 719].) However, the parties have briefed the issues, and we will address them "in order to lay to rest any doubts about the [statute's] constitutionality." (*People v. Hansel* (1992) 1 Cal.4th 1211, 1219 [4 Cal.Rptr.2d 888, 824 P.2d 694].)

[24] Copley also cites *Nixon v. Warner Communications, Inc.* (1977) 435 U.S. 589 [55 L.Ed.2d 570, 98 S.Ct. 1306]. There, the high court "assume[d], *arguendo*," that "the common-law right of [public] access" applied to the judicial records at issue in that case, and therefore declined "to delineate precisely the contours of" that right. (*Id.* at p. 599.) Notably, the high court held that disclosure of the records in question was controlled, not by the common law, but by "*statutory* standards" enacted by the United States Congress. (*Id.* at p. 607, italics added.) That holding supports our conclusion that section 832.7, not the common law, controls the disclosure request in this case.

1216, 1227 [114 Cal.Rptr.2d 482, 36 P.3d 21] [§ 832.7 is part of "statutory scheme" enacted "to protect" peace officers' "interest in privacy to the fullest extent possible"].) Thus, under the express language of the state Constitution, the constitutional provision Copley cites does not "affect . . . the construction" of section 832.7, subdivision (a). (Cal. Const., art. I, § 3, subd. (b)(3).)

Copley's argument under the First Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment (*Keenan v. Superior Court* (2002) 27 Cal.4th 413, 416 [117 Cal.Rptr.2d 1, 40 P.3d 718]), is inconsistent with binding high court authority. In *Los Angeles Police Dept. v. United Reporting Publishing Corp.* (1999) 528 U.S. 32, 37 [145 L.Ed.2d 451, 120 S.Ct. 483] (*United Reporting*), the high court rejected a First Amendment challenge to Government Code section 6254, subdivision (f)(3), which is a CPRA provision authorizing nondisclosure of address information regarding arrestees and crime victims unless the requester declares under penalty of perjury that the request is being made for one of five purposes and that the information will not be used directly or indirectly to sell a product or service. The majority opinion in *United Reporting*, written by Chief Justice Rehnquist for seven justices, explained: "This is not a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses. [Citation.] . . . For purposes of assessing the propriety of a facial invalidation, what we have before us is nothing more than a governmental denial of access to information in its possession. *California could decide not to give out arrestee information at all without violating the First Amendment.* [Citation.]" (*United Reporting, supra,* at p. 40, italics added, fn. omitted.) The two remaining justices expressly endorsed this aspect of the majority opinion, although they dissented on other grounds. (*Id.* at p. 45 (dis. opn. of Stevens, J.).) Thus, in *United Reporting,* the high court unanimously held that California could, without violating the First Amendment, decide to withhold the information altogether.

 Notably, in reaching its conclusion, the majority in *United Reporting* cited *Houchins v. KQED, Inc.* (1978) 438 U.S. 1, 14 [57 L.Ed.2d 553, 98 S.Ct. 2588] (*Houchins*). (*United Reporting, supra,* 528 U.S. at p. 40.) In *Houchins,* the high court reversed an injunction prohibiting the Sheriff of Alameda County from denying members of the news media access to jail facilities, finding that the First Amendment does not guarantee such access. (*Houchins, supra,* 438 U.S. at pp. 7–16 (lead opn. of Burger, C. J.).) On the page cited in *United Reporting,* Chief Justice Burger, representing a majority of the justices deciding the case, explained: "There is no discernible basis for a constitutional duty to disclose, or for standards governing disclosure of or access to information. Because the Constitution affords no guidelines, absent statutory standards, hundreds of judges would, under the Court of Appeals' approach, be at large to fashion ad hoc standards, in individual cases, according to their own ideas of what seems 'desirable' or 'expedient.' We, therefore, reject the

Court of Appeals' conclusory assertion that the public and the media have a First Amendment right to government information regarding the conditions of jails and their inmates and presumably all other public facilities such as hospitals and mental institutions. [¶] 'There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy. [Citation.] The public's interest in knowing about its government is protected by the guarantee of a Free Press, but the protection is indirect. The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act.' "[25] (*Houchins*, at p. 14.)

 Under our constitutional system of government, "a statute, once duly enacted, 'is presumed to be constitutional.' " (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1086 [17 Cal.Rptr.3d 225, 95 P.3d 459].) Unconstitutionality must be clearly, positively, and certainly shown by the party attacking the statute, and we resolve doubts in favor of the statute's validity. (*Ibid.*; *Metropolitan Co. v. Brownell* (1935) 294 U.S. 580, 584 [79 L.Ed. 1070, 55 S.Ct. 538]; *In re York* (1995) 9 Cal.4th 1133, 1152 [40 Cal.Rptr.2d 308, 892 P.2d 804]; *San Francisco v. Industrial Acc. Com.* (1920) 183 Cal. 273, 279–280 [191 P. 26].) In light of *United Reporting* and *Houchins*, Copley cannot meet its burden of showing that section 832.7 is unconstitutional insofar as it permits nondisclosure of the records in question.

Notably, in making its argument, Copley completely fails to mention these high court decisions. Instead, it relies on a line of high court cases finding a qualified First Amendment right of public access to various parts of a *criminal* proceeding. (*Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1 [92 L.Ed.2d 1, 106 S.Ct. 2735] [transcript of preliminary hearing]; *Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501 [78 L.Ed.2d 629, 104 S.Ct. 819] [voir dire]; *Waller v. Georgia* (1984) 467 U.S. 39 [81 L.Ed.2d 31, 104 S.Ct. 2210] [hearing on motion to suppress]; *Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596 [73 L.Ed.2d 248, 102 S.Ct. 2613] [trial examination of victim of specified sexual offense]; *Richmond Newspapers, Inc. v. Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814] [criminal trial].) Copley also relies on *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178 [86 Cal.Rptr.2d

---

[25] Only seven justices participated in *Houchins*. Justice White and then-Justice Rehnquist joined Chief Justice Burger's lead opinion. Justice Stewart wrote a separate opinion concurring in the judgment and stating: "The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do they guarantee the press any basic right of access superior to that of the public generally. The Constitution does no more than assure the public and the press equal access once the government has opened its doors. Accordingly, I agree substantially with what the opinion of The Chief Justice has to say on that score." (*Houchins, supra*, 438 U.S. at p. 16, fn. omitted (conc. opn. of Stewart, J.).) Justice Stevens wrote a dissenting opinion, which Justice Brennan and Justice Powell joined. Justice Marshall and Justice Blackmun did not participate in the case.

778, 980 P.2d 337] (*NBC Subsidiary*) and *Detroit Free Press v. Ashcroft* (6th Cir. 2002) 303 F.3d 681 (*Detroit Free Press*). In the former, we extended the high court's line of authority involving access to criminal proceedings to the civil context, finding a qualified "First Amendment . . . right of access to ordinary civil trials and proceedings." (*NBC Subsidiary, supra,* at p. 1212.) In the latter, the federal Sixth Circuit Court of Appeals extended the same line of authority to the administrative context, finding a qualified "First Amendment right of access to deportation hearings." (*Detroit Free Press, supra,* at p. 705.)

Copley's reliance on these cases is unpersuasive. As we noted in *NBC Subsidiary,* all of the high court cases Copley cites arose in the criminal context, and the high court has not expressly extended its First Amendment right-of-access jurisprudence in those cases to any other context. (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1207, 1209; see also *Tennessee v. Lane* (2004) 541 U.S. 509, 523 [158 L.Ed.2d 820, 124 S.Ct. 1978] ["we have recognized that members of the public have a right of access to criminal proceedings secured by the First Amendment"].) Although we so extended that jurisprudence in *NBC Subsidiary,* we expressly limited the extension "to *ordinary* civil proceedings in general," and stressed that we were not addressing "any right of access to particular proceedings governed by specific statutes." (*NBC Subsidiary,* at p. 1212, fn. 30, italics added.) Moreover, after acknowledging the validity of concern that a constitutional right of access, " 'if not subjected to practical limitations, would theoretically warrant permitting the public to sit and contemporaneously eavesdrop upon everything their government does,' " we explained that this concern "has been accounted for in decisions that have been careful not to extend the public's right of access beyond the adjudicative proceedings and filed documents *of trial and appellate courts.*"[26] (*NBC Subsidiary,* at p. 1212, italics added, fn. omitted.)

Only a few months later, the high court issued just such a decision, holding unanimously in *United Reporting* that California could, without violating the First Amendment, refuse to provide public access to information regarding arrestees and crime victims. (*United Reporting, supra,* 528 U.S. at p. 40.)

---

[26] Civil service commissions, "while they may be invested with mixed powers, including, among others, the power to act judicially in a matter before them, are not courts. At best, they are, in the exercise of that power, proceeding as *quasi* judicial bodies, something quite distinct from courts, and in no manner do they constitute inferior courts, as that term is used in the [state] constitution." (*Chinn v. Superior Court* (1909) 156 Cal. 478, 482 [105 P. 580]; see also *Swars v. Council of City of Vallejo* (1949) 33 Cal.2d 867, 873–874 [206 P.2d 355] [in hearing police officer's appeal of dismissal order, civil service commission was not "a 'court of justice' within meaning of" statute providing that sittings of every court of justice shall be public]; cf. *McCartney v. Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 520–521 [116 Cal.Rptr. 260, 526 P.2d 268] [rejecting judge's constitutional due process claim to open hearing, reasoning that proceedings before Commission on Judicial Qualifications "are neither criminal nor before a 'court of justice' "].)

Notably, in reaching its conclusion, the majority opinion did not even cite the court's earlier cases finding a qualified First Amendment right of access to criminal proceedings, and did not apply the analytical framework set forth in those earlier cases. Nor were those earlier cases or their analytical framework mentioned in any of the separate opinions, all of which agreed that California could constitutionally refuse to disclose the information in question. (*United Reporting, supra*, 528 U.S. at pp. 41–42 (conc. opn. of Scalia, J.); *id.* at pp. 42–44 (conc. opn. of Ginsburg, J.); *id.* at pp. 44–48 (dis. opn. of Stevens, J.).) Lower courts have subsequently applied *United Reporting* in finding no First Amendment right of access to administrative records. (*Center for Nat. Sec. Studies v. Dept. of Justice* (D.C. Cir. 2003) 356 U.S. App.D.C. 333 [331 F.3d 918, 935] [no First Amendment right of access to government records regarding persons detained after terrorist attacks]; *Amelkin v. McClure* (6th Cir. 2000) 205 F.3d 293, 296 [no First Amendment right of access to police accident reports]; *Spottsville v. Barnes* (N.D.Ga. 2001) 135 F.Supp.2d 1316, 1318–1323 [same]; see also *In re Boston Herald, Inc.* (1st Cir. 2003) 321 F.3d 174, 180 ["constitutional . . . right[] of access ha[s] applied only to judicial documents"].) In light of the above, Copley's reliance on *NBC Subsidiary* and the high court cases involving criminal proceedings is unavailing.

For several reasons, Copley's reliance on *Detroit Free Press* is also unpersuasive. First, the only question the court decided there was whether the First Amendment guaranteed public access to a deportation hearing, and the court expressly declined to express an opinion on whether the First Amendment guarantees public access to transcripts and documents from completed hearings. (*Detroit Free Press, supra*, 303 F.3d at p. 684, fn. 4.) Thus, *Detroit Free Press* has little to say regarding the question before us: whether Copley has a First Amendment right of public access to *records* of the Commission.[27] Second, *Detroit Free Press* failed even to mention *United Reporting*, which was decided only three years earlier and which directly addressed the question of First Amendment access to nonjudicial government records. Finally, *Detroit Free Press* incorrectly discounted *Houchins* as a "plurality opinion" that "was neither accepted nor rejected by a majority of the Court" and that "the Court ha[d] since moved away from . . . ." (*Detroit Free Press, supra*, 303 F.3d at pp. 694–695.) In making this statement, the court in *Detroit Free Press* failed to appreciate that because Justice Stewart's concurring opinion in *Houchins* agreed with what the lead opinion said regarding an alleged First Amendment "right of access to information generated or controlled by government" (*Houchins, supra*, 438 U.S. at p. 16 (conc. opn. of Stewart, J.)), "a four-member majority" held in *Houchins* "that

---

[27] We express no opinion regarding whether Copley has a constitutional right to attend Commission appeal hearings. As the Court of Appeal explained, the facts of this case do not present that question. (See *ante*, fn. 3.)

the First Amendment [does not] guarantee . . . public access to sources of information under government control." (*San Jose Mercury-News v. Municipal Court* (1982) 30 Cal.3d 498, 503 [179 Cal.Rptr. 772, 638 P.2d 655], fn. omitted.) The court in *Detroit Free Press* also failed to realize that in 1999, seven high court justices in *United Reporting* expressly reaffirmed *Houchins*'s vitality by citing it in holding that California could, without violating the First Amendment, deny all public access to information in police records about arrestees and crime victims (*United Reporting, supra,* 528 U.S. at p. 40), and that even the two dissenting justices in *United Reporting* agreed with the majority's holding on this issue. (*Id.* at p. 45 (dis. opn. of Stevens, J.).) For these reasons, *Detroit Free Press* is of little assistance here.[28] Thus, under *United Reporting* and *Houchins,* we reject Copley's First Amendment claim.[29]

## CONCLUSION

The judgment of the Court of Appeal is reversed and the matter is remanded for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Moreno, J., and Corrigan, J., concurred.

**WERDEGAR, J.,** Dissenting.—We consider in this case the interest of the public, here represented by a major San Diego daily newspaper, in full disclosure of the records of a San Diego County Sheriff's deputy's administrative appeal of departmental discipline. We also consider the extent of the deputy's right to keep his personnel matters private and out of the public eye. The majority correctly recognizes we must interpret the applicable statutory language in the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.), and its incorporation of the limitations on disclosure set forth in Penal Code section 832.7, with the goal of implementing the Legislature's intent. Faithful adherence to the plain meaning of these statutory provisions will ensure that the ultimate result in this case is consistent with the balance struck by the Legislature regarding the relative importance of disclosing the secret inner workings of the government, on the one hand, and maintaining the individual privacy of the officer, on the other.

---

[28] We also note that several courts have disagreed with and criticized *Detroit Free Press.* (*Center for Nat. Sec. Studies v. Dept. of Justice, supra,* 331 F.3d at p. 932 [no First Amendment right of access to government records regarding persons detained after terrorist attacks]; *North Jersey Media Group, Inc. v. Ashcroft* (3d Cir. 2002) 308 F.3d 198, 201, 204–205 [no First Amendment right to attend deportation hearings].)

[29] In light of our conclusion under section 832.7 and Government Code section 6254, subdivision (k), we need not decide whether the information requested here is also protected under Government Code section 6254, subdivision (c).

Because the majority misconstrues the applicable statutes, it incorrectly holds that every aspect of the deputy's administrative appeal should remain secret, including even the deputy's name. By so doing, the majority overvalues the deputy's interest in privacy, undervalues the public's interest in disclosure, and ultimately fails to implement the Legislature's careful balance of the competing concerns in this area. Accordingly, I dissent.

## I

As the majority explains, The Copley Press, Inc. (Copley Press), publisher of the San Diego Union-Tribune newspaper, sought disclosure from the County of San Diego Civil Service Commission (the Commission) of certain documents related to the Commission's hearing on a deputy sheriff's appeal from his department's proposed discipline of him. In seeking such disclosure, Copley Press relied on the CPRA, which "was enacted in 1968 to safeguard the accountability of government to the public, for secrecy is antithetical to a democratic system of 'government of the people, by the people [and] for the people.' The Act 'was enacted against a "background of legislative impatience with secrecy in government . . . ." (53 Ops.Cal.Atty.Gen. 136, 143 (1970).)' " (*San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 771–772 [192 Cal.Rptr. 415].) As this court has explained: "Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process. However, a narrower but no less important interest is the privacy of individuals whose personal affairs are recorded in government files." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470], fns. omitted; see also Gov. Code, § 6250 [Legislature's declaration in enacting the CPRA that access to government information "is a fundamental and necessary right"].)

Although the CPRA begins with the general rule of openness and disclosure of government information, it exempts from disclosure 29 categories of materials.[1] (Gov. Code, § 6254.) "These exemptions are permissive, not mandatory. The [CPRA] endows the agency with discretionary authority to override the statutory exceptions when a dominating public interest favors disclosure." (*CBS, Inc. v. Block, supra,* 42 Cal.3d at p. 652.) If an agency denies a request for disclosure under the CPRA, it must justify its denial by showing the CPRA expressly exempts the record in question from disclosure. (Gov. Code, § 6255, subd. (a).)

---

[1] As one court describes it: "The objectives of the Public Records Act thus include preservation of islands of privacy upon the broad seas of enforced disclosure." (*Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645, 653 [117 Cal.Rptr. 106].)

In denying Copley Press's claim for disclosure under the CPRA, the Commission cited two statutory provisions, but (like the majority) I need discuss only one, Government Code section 6254, subdivision (k) (section 6254(k)).[2] That statute provides in relevant part: "[N]othing in this chapter shall be construed to require disclosure of records that are any of the following: [¶] . . . [¶] (k) Records, the disclosure of which is exempted or prohibited pursuant to federal or state law . . . ." This subdivision "is not an independent exemption" (*CBS, Inc. v. Block, supra,* 42 Cal.3d at p. 656), but incorporates other statutes that protect against disclosure. In this case, real parties in interest allege section 6254(k) incorporates Penal Code section 832.7, which renders confidential two types of law enforcement records, prohibiting their disclosure "in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code."[3] (Pen. Code, § 832.7, subd. (a).) The first type are "[p]eace officer or custodial officer personnel records" or information obtained from such records. (*Ibid.*) Such personnel records, in turn, are defined in Penal Code section 832.8 as "any file maintained under that individual's name *by his or her employing agency* . . . ." (Italics added.) Thus, the first category of material made confidential by Penal Code section 832.7 is expressly limited to personnel records *maintained by the officer's employing agency or department.*

The second type of law enforcement records made confidential by Penal Code section 832.7 (and thus protected from disclosure by Government Code section 6254(k)) are "records [or information obtained from such records] maintained by *any state or local agency pursuant to Section 832.5*" (Pen. Code, § 832.7, subd. (a), italics added), i.e., records relating to citizen complaints. Subdivision (a)(1) of Penal Code section 832.5 states that "[e]ach department or agency in this state *that employs peace officers*" must "establish a procedure to investigate complaints by members of the public" against their personnel. (Italics added.) Subdivision (b) requires that such complaints

---

[2] The Commission relied also on Government Code section 6254, subdivision (c), which provides in pertinent part: "[N]othing in this chapter shall be construed to require disclosure of records that are any of the following: [¶] . . . [¶] (c) Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." The bulk of the Commission's records, however, do not fall under the terms of this provision. With the exception of the deputy's actual personnel file and information obtained from that file (see Pen. Code, § 832.7, subd. (a)), the statutory exception from disclosure set forth in section 6254, subdivision (c) provides no basis on which to withhold the Commission's records from Copley Press.

Although Copley Press also claims a constitutional right to disclosure of the Commission's records, I would not reach the constitutional issue inasmuch as I would find disclosure is required under the CPRA. (See *People v. Brown* (2003) 31 Cal.4th 518, 534 [3 Cal.Rptr.3d 145, 73 P.3d 1137] [courts should decline to reach constitutional questions if a statutory claim is dispositive].)

[3] I agree with the majority that this language does not preclude application of Penal Code section 832.7 to administrative proceedings, as here. (Maj. opn., *ante,* at pp. 1284–1286.)

and any related reports be retained for at least five years either in the officer's "general personnel file or in a separate file designated by the department or agency," provided that "prior to any official determination regarding promotion, transfer, or disciplinary action," complaints described in subdivision (c) must be "removed from the officer's general personnel file and placed in [a] separate file designated by the department or agency." Subdivision (c) provides that complaints or any portion of a complaint the officer's *"employing agency"* (italics added) finds to be "frivolous, . . . unfounded or exonerated" must not be maintained in the officer's general personnel file. Finally, subdivision (d)(1) defines " '[g]eneral personnel file' " as "the file maintained by the agency" containing the officer's employment records.

Considering the subdivisions of Penal Code section 832.5 together, it is apparent the Legislature used the terms "agency" and "department" to refer to the public entity that *employs* the officer involved. Thus, files deemed confidential under Penal Code section 832.7's second category of material, like its first, are limited to those maintained by the peace officer's *employing agency or department.* This agency may be a city police department (employing a police officer), a county sheriff's department (employing a deputy sheriff) or the Department of Corrections and Rehabilitation (employing a correctional officer).

The law applicable to this case is not unlike a set of nesting dolls, in which one law fits within another. We begin with the general rule of disclosure of government records (the CPRA), move to a possible exception to the general rule (Gov. Code, § 6254(k)), which in turn incorporates a law establishing the confidentiality of certain law enforcement records (Pen. Code, § 832.7), which specifically renders confidential only peace officer personnel records as defined by Penal Code section 832.8, and records maintained by any state or local agency as defined by Penal Code section 832.5, both of which are limited to files maintained by *the officer's employing agency.* It is in these final definitions, located deep within this network of self-referential statutory provisions, that the majority purports to strike gold. Declaring that because the Commission has been designated to provide administrative appeals for employees of the San Diego County Sheriff's Department, the majority opines "it is reasonable to conclude that for purposes of applying the relevant statutes in this case, the Commission *is functioning as part of 'the employing agency'* and that any file it maintains regarding a peace officer's disciplinary appeal constitutes a file 'maintained . . . by [the officer's] employing agency' within the meaning of section 832.8." (Maj. opn., *ante,* at p. 1288, italics added.)

What the majority has found is fool's gold. No amount of judicial juggling or legal legerdemain can convert a county's civil service commission into the

agency that employs the county's law enforcement officers. Certainly no evidence appears in the record—and the majority cites none—showing that the Commission has ever accepted a job application from this deputy; conducted a background check or hired him; issued a paycheck to him; contacted him about his medical, dental or retirement benefits; had the power to promote or demote him; or had any say over his day-to-day assignments. That the deputy was employed by the San Diego County Sheriff's Department, not the Commission, is plain.

Even accepting as accurate the majority's characterization—dubious at best—of how the Commission is "functioning," Penal Code section 832.7 does not sweep within its embrace all entities that merely function or act as part of the employing agency; it requires that the files be maintained by the entity that *actually is* the employing agency. (See Pen. Code, § 832.8 [file maintained "by his or her employing agency"]; *id.*, § 832.5, subd. (a)(1) [referring to "[e]ach department or agency in this state that employs peace officers"].) In concluding otherwise, the majority strays far from the plain meaning of the applicable statutory language.

The majority posits that if the Commission is not the employing agency, a citizen complaint the *Commission* finds frivolous or unfounded need not be removed but can remain in the deputy's file, a result the majority finds unreasonable. (Maj. opn., *ante*, at p. 1288.) This concern is baseless. Where, as here, a county civil service commission is designated to hear appeals in peace officer disciplinary cases, the officer's employing agency must abide by the commission's decision. " 'The Commission's decisions shall be final, and *shall be followed by the County* unless overturned by the courts on appeal.' " (*Civil Service Com. v. Superior Court* (1984) 163 Cal.App.3d 70, 77 [209 Cal.Rptr. 159].) Thus, for example, had the Commission here found the complaint against the deputy to be frivolous, the sheriff's department, absent an appeal, presumably would in all respects adopt and abide by that decision. The contrary conclusion—that the department would retain the complaint in the deputy's personnel file on the ground that it was the Commission, and not the department, that had found the complaint frivolous or unfounded—seems farfetched. Certainly nothing the majority says supports the speculation that a law enforcement agency would (or could) disregard the Commission's decision on appeal.

Taking a somewhat different tack, the majority concludes that the Commission's *own records* qualify as records "maintained . . . pursuant to Section 832.5" (Pen. Code, § 832.7, subd. (a)) and thus are confidential under the statutory scheme. The majority reasons that because Penal Code section 832.5, requiring the retention for at least five years of citizen complaints and any related reports or findings, does not specify the entity that must maintain

these records and "*does* expressly specify that 'complaints retained pursuant to [the statute] may be maintained . . . in a separate file designated by the department or agency' " (maj. opn., *ante*, at p. 1291), "it is reasonable to conclude that because the Commission has been designated to hear disciplinary appeals, its records qualify under section 832.7, subdivision (a), as 'records maintained by any state or local agency pursuant to Section 832.5' " (*ibid.*). But the absence of any evidence or suggestion in the record that the sheriff's department has in fact designated the Commission to retain a file of complaints for five years, as required by section 832.5, subdivision (b), wholly undermines the majority's analysis on this point.

The majority next argues its conclusion the Commission employs the deputy sheriff must be correct, because a contrary conclusion would render the scope of confidentiality available to peace officers dependent "on several fortuities: the entity hearing an appeal and the timing of the request." (Maj. opn., *ante*, at p. 1292.) Neither rationale is persuasive.

Because a law enforcement agency has discretion to decide the mechanism for administrative review of disciplinary matters (Gov. Code, § 3304.5), different agencies likely will choose different mechanisms. The majority erroneously assumes—with no support from legal authority or legislative history—that regardless of the review mechanism chosen (or, as here, imposed on the agency), the level of confidentiality attaching to the record of a peace officer's appeal of proposed discipline must be the same. (Maj. opn., *ante*, at pp. 1292–1293.) But no such "equality" principle is apparent in the statutory scheme, nor is the possibility of different levels of mandatory disclosure under the CPRA contrary thereto. By limiting the exception to the CPRA to personnel files maintained by the "employing agency," the Legislature left open the possibility that law enforcement-related files maintained by *other* public agencies would be subject to disclosure under the CPRA.

A law enforcement agency may have any number of reasons to provide for independent commission—rather than in-house—review of police disciplinary matters, with its attendant greater public scrutiny. Community concerns about police brutality, oversight imposed by the city counsel or county board of supervisors, a charter mandate (as here), the size of the department (does it have several hundred officers or just two?), negotiated outcomes between a department and the union representing the rank-and-file, all these factors can no doubt play a part in the choice of an independent commission to provide administrative review. That an option exists to provide less disclosure to the public does not logically preclude an option providing for greater openness in government. The majority fails to explain why a law enforcement agency's or local government's choice to use an administrative review mechanism that involves more disclosure to the community is unreasonable.

The majority also contends that if the Commission is not considered the deputy's employing agency, the level of disclosure would turn arbitrarily on the timing of any request to disclose. Thus, according to the majority, if only the sheriff's department is the deputy's employer, only the sheriff's department would be statutorily required to maintain the record of his disciplinary appeal. (Pen. Code, § 832.5, subd. (b).) In that case, disclosure could be had from the Commission under the CPRA; but if the Commission destroyed its records before the request, the copy of the record in the sheriff's department's possession would acquire confidentiality as a "personnel record" maintained pursuant to Penal Code section 832.5, precluding its disclosure. (Maj. opn., *ante*, at pp. 1292–1293.)

The majority is incorrect. If the Commission's record of the appeal is subject to disclosure under the CPRA, the sheriff's department could not shield it from disclosure by placing it in the deputy's personnel file. *Williams v. Superior Court* (1993) 5 Cal.4th 337 [19 Cal.Rptr.2d 882, 852 P.2d 377] is instructive. There we addressed the exception to CPRA disclosure set forth in Government Code section 6254, subdivision (f), concerning law enforcement investigatory files. The parties in *Williams* disputed whether the information in such files would remain confidential after the investigation ended. This court concluded the exception applied even after the investigation ended, but also stated that "the law does not provide . . . that a public agency may shield a record from public disclosure, regardless of its nature, simply by placing it in a file labelled 'investigatory.' " (*Williams v. Superior Court*, at p. 355.) Similarly, the Court of Appeal in *New York Times Co. v. Superior Court* (1997) 52 Cal.App.4th 97, 103 [60 Cal.Rptr.2d 410], commenting on that possibility, opined: "The labels of 'personnel records' and 'internal investigation' are captivatingly expansive, and present an elasticity menacing to the principle of public scrutiny of government. A public servant may not avoid such scrutiny by placing into a personnel file what would otherwise be unrestricted information. A conclusion to the contrary would weaken and despoil the Public Records Act." Because a law enforcement agency cannot avoid the mandate of the CPRA by placing a disclosable document into a peace officer's personnel file, the level of confidentiality does not turn on the timing of the disclosure request.

Finally, the majority reasons that failure to adopt the fiction that the Commission is the deputy's employing agency would "significantly impact a peace officer's right of administrative appeal," presenting deputies with a "[h]obson's choice" of vindicating their rights on appeal or retaining the confidentiality of their personnel records. (Maj. opn., *ante*, at p. 1296.) A hobson's choice is defined as either "an apparent freedom to take or reject something offered when in actual fact no such freedom exists" (Webster's 3d New Internat. Dict. (2002) p. 1076, col. 1) or "the necessity of accepting one of two equally objectionable things" (*ibid.*). As to the first definition, a peace

officer facing disciplinary charges has a viable choice: he may appeal to the Commission, in which case the proceedings before the Commission (but not his actual personnel file) will be disclosable under the CPRA, or he can decline to appeal, accept his discipline and keep everything secret. The officer's situation is no different than that of any civil litigant who, in order to vindicate legal rights in court, must submit to pretrial discovery and endure a public trial. That a choice may come freighted with some disadvantages does not render it illusory. As for the second definition, even if these choices as the majority suggests are "equally objectionable" to the officer, the majority does not explain why a peace officer facing discipline is entitled to pursue an administrative appeal free from uncomfortable choices. Guarding the confidentiality of the deputy's actual personnel file, maintained by the sheriff's department, but allowing for the disclosure of other information having an origin outside that file, hardly places a burden on a deputy's administrative right to appeal so intolerable and objectionable that we may conclude the Legislature could not have intended that result. So far as we know, a peace officer may be desirous of having his appeal heard by an independent body, one drawn from outside his immediate chain of command. Although the majority states "[t]here is no evidence the Legislature intended to give *local* agencies discretion to force peace officers to make" a choice between appeal and disclosure (maj. opn., *ante*, at p. 1296), there likewise is no evidence the Legislature intended to *preclude* such discretion. Indeed, because Government Code section 3304.5 leaves the "precise details" of an officer's right to administrative appeal[4] to be determined by individual local law enforcement agencies (*Caloca v. County of San Diego* (2002) 102 Cal.App.4th 433, 443 [126 Cal.Rptr.2d 3]), equally likely is that the Legislature intended to give such agencies the discretion to require more disclosure on appeal, so long as the review procedures established, as here, do not violate any express provision of the statutory scheme set forth in Penal Code sections 832.5, 832.7, 832.8, or in the CPRA.

## II

No doubt San Diego County chose the Commission to hear peace officer appeals for a specific reason. The Commission is "a 'quasi-independent' county agency. In contrast to most county agencies, which are directly supervised by the board of supervisors [citation], the Commission's unique review function demands an independence which is specifically provided for in section 904.1 of the San Diego County Charter (as amended Dec. 17,

---

[4] Government Code section 3304, subdivision (b) provides: "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal."

1982): 'The Commission is the administrative appeals body for the County in personnel matters authorized by this Charter. Upon appeal, the Commission may affirm, revoke or modify any disciplinary order, and may make any appropriate orders in connection with appeals under its jurisdiction. The Commission's decisions shall be final, and shall be followed by the County unless overturned by the courts on appeal.' " (*Civil Service Com. v. Superior Court, supra,* 163 Cal.App.3d at p. 77, italics omitted.)[5]

Because the Commission does not employ the deputy being disciplined in this case, its records are presumptively open under the CPRA. Only to the extent qualifying records maintained by the deputy's employer—the San Diego County Sheriff's Department—or information obtained from those records (Pen. Code, § 832.7, subd. (a)) are introduced in the appeal hearing would the Commission's records remain confidential under Government Code section 6254(k) and Penal Code section 832.7. Even information presented to the Commission that is duplicated in the officer's file would not necessarily be rendered confidential by section 6254(k) (incorporating Pen. Code, § 832.7) if it had a source independent from the personnel file itself. Only if the information is "obtained from" that file (Pen. Code, § 832.7), as would be the case if the file were read into evidence, would the exception to disclosure apply. For example, the name of an officer and the nature of his alleged misconduct may be derived from testimony before the Commission by the complaining witness herself or from other eyewitnesses to the alleged misconduct. As the Court of Appeal below observed: "Testimony of a percipient witness to events, or from documents not maintained in the personnel file, is not information subject to section 832.7 even though that information may be identical to or duplicative of information in the personnel file." On the other hand, investigative information in the file that does not come out at the hearing remains confidential.

Contrary to the majority's assertions, unlike *In re Reeves* (2005) 35 Cal.4th 765 [28 Cal.Rptr.3d 4, 110 P.3d 1218], cited by the majority (maj. opn., *ante,* at p. 1299, fn. 22), reference in the statutory scheme to the officer's "employing agency" is not ambiguous. By ignoring the actual language of the CPRA and Penal Code sections 832.5, 832.7 and 832.8, the majority unjustifiably enlarges the confidentiality of law enforcement personnel files and concomitantly reduces the amount of information disclosable to the public under the CPRA regarding how our law enforcement officers are performing their duties. Although the majority relies throughout on its view of what is

---

[5] That *Civil Service Com. v. Superior Court, supra,* 163 Cal.App.3d 70, does not establish the Commission's independence "for all purposes" (maj. opn., *ante,* at p. 1289), as the majority opines, does not of course mean the Commission *lacks* independence *for any purpose.* Significantly, the majority identifies no reason San Diego County would designate the Commission to hear disciplinary appeals, other than the Commission's independence.

"reasonable," I submit it is for the Legislature, and not this court, to make the policy decision concerning the appropriate balance between a peace officer's right to confidentiality of his or her personnel records and the public's right to accountability in government. In imposing its own view of what is reasonable, the majority departs from the clear statutory language that should be our only guide.

Because I disagree the Commission employs this deputy sheriff, I would find the Commission's records are not privileged under Penal Code section 832.7 and thus should have been disclosed under the CPRA. Because the majority finds otherwise, I dissent.