Filed 7/23/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE FEDERATED UNIVERSITY POLICE OFFICERS ASSOCIATION,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>      Respondent;<br><br>LOS ANGELES TIMES COMMUNICATIONS LLC et al.,<br><br>      Real Parties in Interest. | A136014<br><br>(Alameda County<br>Super. Ct. No. RG 12632350) |

**I.**

**INTRODUCTION**

The Federated University Police Officers Association (FUPOA), a labor union representing University of California (UC) police officers, has filed a petition for writ of mandate from a trial court order requiring the release of unredacted reports containing the names of UC police officers under the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.).  The public records requests were made by real parties in interest Los Angles Times Communications LLC and The McClatchy Company doing business as The Sacramento Bee (newspapers), to gain access to complete, unredacted versions of two reports commissioned by the University of California Board of Regents (the Regents).   The reports studied a November 18, 2011 incident on the UC Davis campus during which UC Davis police officers were videotaped pepper spraying demonstrators who were nonviolently protesting escalating college costs on the UC Davis campus

1

(pepper spray incident). The reports reviewed the facts leading up to the pepper spray incident, made conclusions regarding responsibility for the incident, and concluded with policy recommendations to ensure that such a polarizing incident did not reoccur. However, the names of more than a dozen UC police officers who planned, participated in, and/or witnessed the pepper spray incident were redacted from the reports.

In seeking writ relief, FUPOA asserts that the court erred in ordering disclosure because the redaction of the officers' names was necessary to protect the confidentiality of their personnel records as required under Penal Code section 832.7, subdivision (a).[1] The union argues that the officers' identities can only be disclosed pursuant to the procedures set out in Evidence Code sections 1043 through 1045 for granting a motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

We agree with the trial court that the identities of the officers named in the reports must be disclosed because this information does not fall within any category of exempted information under section 832.7, subdivision (a). Consequently, FUPOA's request for writ relief is denied.

## II.

## FACTS AND PROCEDURAL HISTORY

On November 18, 2011, a UC Davis police officer, later identified as Lieutenant John Pike (Pike), was videotaped methodically pepper spraying a row of nonviolent, seated protestors at close range after they failed to obey orders to disperse. The pepper spray incident took place after the students and their supporters had gathered on the campus to protest rising college costs. Videotapes of the close-range spraying of the

---

[1] All undesignated statutory references are to the Penal Code. Section 832.7, subdivision (a) provides: "Peace officer . . . personnel records and records maintained by any state or local agency pursuant to Section 832.5 [relating to citizens' complaints], or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." Notwithstanding the plain language of the statute, FUPOA can assert the information is protected under section 832.7, subdivision (a), even though there has been no request for the information in a criminal or civil proceeding. (*Copley Press, Inc.* v. *Superior Court* (2006) 39 Cal.4th 1272, 1284-1286 (*Copley Press*).)

demonstrators were posted on the Internet and went "viral," triggering widespread criticism of how the police handled the protest.

In response, UC President Mark Yudof announced that he had hired former New York City Police Commissioner and Los Angeles Police Chief William J. Bratton and his consulting company, Kroll, "to provide the chancellor and the entire University of California community with an independent, unvarnished report about what happened at Davis." He also announced the appointment of former California Supreme Court Justice Cruz Reynoso to chair a task force (the Reynoso Task Force) to examine the pepper spray incident.

The Reynoso Task Force was comprised of a cross-section of individuals from the UC Davis community, including students and academic officials. President Yudof asked the Reynoso Task Force to receive and review the fact-finding report from Kroll concerning the pepper spray incident, to issue findings regarding responsibility, and to provide recommendations to UC Davis Chancellor Linda Katehi and President Yudof on improvements to police procedures, command protocols, and campus policies that would "help ensure the rights and safety of nonviolent protestors" in the future.

In preparing its report, Kroll interviewed approximately 14 UC police officers about the pepper spray incident. The officers were ordered by the UC Davis acting chief of police "to appear for an interview with Kroll and to cooperate with their [*sic*] investigation . . . ." However, the officers were assured that UC "will not use any information that you provide to Kroll against you in any disciplinary proceeding." Additionally, Kroll did not interview police officers who were the target of any citizen complaints, or the subject of any internal affairs investigations with respect to their role in the pepper spray incident. The Kroll report states: "As personnel investigations are deemed confidential under California law, this report does not include information obtained from any interview of any officer whose use of force is being reviewed or who has been deemed a potential subject of discipline; only witness officers have been interviewed."

3

Furthermore, while Kroll obtained documents from UC Davis, its investigation was conducted without UC Davis sharing any information generated by the internal affairs process. The Kroll report states, "[T]he Kroll team has had virtually no contact with the Internal Affairs (IA) investigative team. The IA investigative team has not provided or shared any information with the Kroll team including a witness list." Basically, as clarified in the Kroll report, "The report of the Internal Affairs investigation will be confidential, pursuant to California law, while the Kroll report is intended to be public."

The Kroll report is extensive and detailed. It collects and recites facts regarding all aspects of the incident, including how: (1) the UC Davis administration's decision-making process worked; (2) the administration communicated instructions to the UC police officers, including the content of those instructions; and (3) the UC police officers planned and executed the clearing of demonstrators from the campus. Following this careful recital of facts, the Kroll report provides an "Analysis," in which the report discusses "a cascading series of errors which set the stage for the use of pepper spray." The Kroll report identifies "three types of failures that set the stage for the use of pepper spray:  failures of leadership, failures of communication and failures of documentation."

Consistent with the Kroll report's declared limited mission, it does not recommend any discipline for any police officer, stating it was "not address[ing] the issue of discipline to be imposed, if any, on individual officers for any use of force that occurred on November 18." Instead, it restricts its recommendations to decision-making by the UC Davis administration, the statewide reorganization of the UC police force, and proposed training for UC police officers.

The Reynoso Task Force Report (the Reynoso report) derives its facts entirely from the Kroll report. It contains one blunt overall finding:  "**The pepper-spray incident that took place on November 18, 2011 should and could have been prevented**." (Original boldface.) The Reynoso report assigns responsibility to nearly everyone involved in the pepper spray incident, from the UC Davis campus administration to the police officers who were on duty that day. After considering

4

various decision points occurring during the incident, the Reynoso report describes how and why those decisions were made by specific individuals. The report then assigns responsibility to specific individuals, including police officers, for these failed decisions. Several pages of recommendations are made for the UC Davis administration, the UC Davis police, as well as the UC system in general. However, the Reynoso report clarifies that "[t]he Charge to the Task Force did not include requesting recommendations for disciplinary action."

The Kroll report and the Reynoso report (the reports) were issued on April 12, 2012. When issued, the names and ranks of all of the officers—both witness and subject officers—were redacted with the exception of two individuals whose identities were widely known, Pike (the officer captured on the video recording actively participating in the pepper spray incident), and then-UC Davis Police Chief Annette Spicuzza. Instead of identifying the officers by name, pseudonyms are used, such as "Officer F successfully removed arrestees from the site" and "[i]f Lts. [*sic*] Pike and Officer P had been aware of Officer F['s] success, they may have considered a different tactic."

The redaction of the officers' names in the reports was the result of the first round of litigation. FUPOA and Pike originally sought to stop the release of the reports in their entirety. They claimed "[t]his relief is necessary to stop the unlawful release of confidential peace officer personnel information" as protected by section 832.7, subdivision (a). In this earlier action, the Regents advocated for the publication of the reports *without* redaction of police officer names and ranks. However, the Regents eventually agreed to a settlement with FUPOA to end that litigation. The settlement allowed for the release of the reports, so long as the names and ranks of the police officers were redacted, other than Pike and Spicuzza. Importantly, in making this settlement, the parties expressly agreed that it did not affect any obligation the Regents might have to produce the requested records pursuant to the CPRA.

After the reports were released, the newspapers submitted a series of requests under the CPRA for the complete, unredacted versions. On May 29, 2012, the newspapers commenced the instant matter, and filed a verified petition for writ of

5

mandate to compel UC to disclose the complete, unredacted reports. After a hearing, the court granted the petition, and ordered that the officers' names be disclosed and that the pseudonyms be removed from the reports. The court concluded the names of officers were not made confidential by section 832.7, subdivision (a), because the names were not records relating to complaints or investigations of complaints concerning an individual officer's performance of duties. The court "[was] not persuaded that either the [L]egislature or the California Supreme Court intended Penal Code section 832.7 to apply whenever public entities conducted broad policy reviews that involve an examination of law enforcement policies, procedures, or actions and to preclude all public entities from disclosing the results of those reviews if the review touches—however tangentially—on the conduct of individual police officers."

In the trial court proceedings, FUPOA also relied on certain exemptions to the CPRA found in Government Code sections 6254, subdivision (c)[2] and 6255[3], arguing that the officers faced a risk of harm if their names were disclosed, and that the alleged harm outweighed the benefit of disclosure. The court rejected this argument as well, pointing out that some of the officers' names had been discovered (not as a result of any action by the parties to this proceeding), and there was no evidence that they had been subject to intimidation or harassment. Therefore, neither exception to the CPRA applied. We note that there is no challenge in this writ proceeding to the court's conclusion that FUPOA had failed to demonstrate that any of the officers quoted or referred to in the reports were likely to suffer harmful consequences as a result of the disclosure of their names.

Pursuant to Government Code section 6259, subdivision (c), the trial court stayed the effect of its order and judgment through July 27, 2012, to permit the filing of a

---

[2] Government Code section 6254, subdivision (c) allows an agency to withhold from production in response to a CPRA request: "Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy."

[3] The "catch-all" exemption to the CPRA, Government Code section 6255, provides that an agency can withhold a document on the basis that "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."

petition for extraordinary writ relief to seek review of this ruling. On July 23, 2012, FUPOA filed the instant petition for writ of mandate in this court seeking review of the trial court's disclosure order. On July 24, 2012, we stayed the trial court's order pending our decision. We also requested real parties in interest, the newspapers, to file opposition to the petition, and gave FUPOA an opportunity to reply to the opposition. The Regents also filed a brief indicating they were taking no position on the merits of this litigation, but "stand ready to abide by the Court's ruling."

After reviewing the parties' briefing, this court summarily denied the petition on September 14, 2012, but granted a stay so that FUPOA could seek review of the matter by the California Supreme Court. FUPOA then filed a petition for review in the California Supreme Court (Case No. S205468) on September 20, 2012. FUPOA requested that the Supreme Court either: (1) grant and hold this matter until a decision is rendered by the Supreme Court in a case with a related, but not identical issue, *Long Beach Police Officers Association v. City of Long Beach*, Case No. S200872[4]; or (2) remand the case to this court for a decision on the merits.

On October 17, 2012, our Supreme Court unanimously granted review in this case, and transferred the matter back to this court "with directions to vacate its order denying the petition for writ of mandate and to issue an order directing respondent superior court to show cause why the relief sought in the petition should not be granted." The Supreme Court also stayed the trial court's June 26, 2012 order directing the Regents to disclose the unredacted reports, including the names of police officers identified in the reports, pending further order of this court.

Pursuant to the Supreme Court order, on October 24, 2012, this court vacated its order denying the petition for writ of mandate and ordered the superior court to show cause why the relief sought in the petition should not be granted. Real parties in interest, the newspapers, filed a return to the petition on November 16, 2012, and FUPOA filed a

---

**4** According to the Supreme Court's website, *Long Beach* presents the following issue "Are the names of police officers involved in on-duty shooting incidents subject to disclosure under the California Public Records Act?"

7

reply on December 5, 2012.  On December 20, 2012, we granted permission for the American Civil Liberties Union Foundation of Northern California, Inc. (ACLU) to file an amicus curiae brief on behalf of the newspapers.[5]

## III.

## DISCUSSION

### A.  The California Public Records Act

The CPRA is based on the principle that "access to information concerning the conduct of the public's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250.)  As the California Supreme Court has explained: "Implicit in the democratic process is the notion that government should be accountable for its actions.  In order to verify accountability, individuals must have access to government files.  Such access permits checks against the arbitrary exercise of official power and secrecy in the political process." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651, fn. omitted (*CBS*).)  To achieve these goals, the Supreme Court has declared that "[m]aximum disclosure of the conduct of governmental operations" is necessary.  (*Id.* at pp. 651-652.)[6]  These policies are especially salient when the subject is law enforcement. " 'In order to maintain trust in its police department, the public must be kept fully informed of the activities of its peace officers.' [Citation.]" (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 297 (*POST*).)

However, the right to obtain public records is not absolute, and in adopting the CPRA, the Legislature also declared it was "mindful of the right of individuals to privacy." (Gov. Code, § 6250.)  Accordingly, the Legislature enacted a number of exceptions that are designed to protect an individual's privacy rights.  (Gov. Code,

---

[5]  Although we allowed until January 4, 2013, for any party to respond to the ACLU's amicus brief, no response was received.

[6]  Californians reaffirmed this important principle in 2004 by elevating the public's right of access to government records to the state Constitution.  (See Cal. Const., art. I, § 3, subd. (b).)

§ 6254.)[7] One such exception protects from disclosure "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code, § 6254, subd. (k).) This provision incorporates into its exemption the protections of section 832.7, subdivision (a), making police personnel records confidential. (*City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1440 (*City of Richmond*).)

There is no dispute that the names of officers, who are referred to by pseudonyms in the reports, fall within the CPRA's broad coverage of "public records" (Gov. Code, § 6252, subd. (e)), nor is there any question that UC is an agency covered by the CPRA (Gov. Code, § 6252, subd. (d).) Consequently, the information requested by the newspapers *must* be disclosed unless the proponent of nondisclosure, in this case FUPOA, meets its burden of showing that one of the exemptions to the CPRA applies. (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 336-337; *CBS Broadcasting, Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 908 [" '[t]he burden of proof [of establishing that an exemption to the CPRA applies] is on the proponent of nondisclosure' "].) In this regard, we emphasize an important rule of statutory construction in CPRA cases—that "exemptions from the general rule of disclosure are construed narrowly." (*Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, 447; *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 756 [same]; *Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1045 [same].) This well-settled rule of construction serves as the predicate for this court's determination of whether the statutory exemption for peace officer personnel records codified in

---

[7] As already noted, FUPOA's petition contains no argument challenging the trial court's decision that the statutory exceptions to the CPRA codified at Government Code sections 6254, subdivision (c) and 6255 do not apply in this case. Accordingly, we deem any argument in connection with the applicability of these provisions and any challenge to the trial court's balancing of interests to be abandoned, and we will not address them further. (See *In re Sade C.* (1996) 13 Cal.4th 952, 994 [issues not raised are deemed waived or abandoned].)

section 832.7, subdivision (a), can be interpreted as exempting the names of officers interviewed and referred to in the reports.

## B.  Legislative Enactment of Section 832.7, subdivision (a) and Standard of Review

California law governing the protection of police personnel records is found in a series of statutes enacted in 1978, specifically sections 832.7 and 832.8, and Evidence Code sections 1043 through 1045.  (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).)  These statutes are commonly referred to as "*Pitchess* statutes" in reference to the California Supreme Court case *Pitchess*, *supra*, 11 Cal.3d 531.  In *Pitchess*, our Supreme Court recognized the right of criminal defendants, who are "entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information," to discover the contents of a peace officer's personnel records in order to perfect and develop claims that the defendants were acting in self-defense.  (*Id.* at p. 535.)

Following the *Pitchess* decision, criminal defendants began to make "fishing expeditions" for information from police officer personnel files to determine if the arresting officers had faced complaints made by others.  In response, rather than produce the documents as required by *Pitchess*, certain police agencies began engaging in wholesale shredding of personnel files.  (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 54; *San Francisco Police Officers' Assn. v. Superior Court* (1988) 202 Cal.App.3d 183, 189.)  The 1978 statutory scheme addressed this situation by requiring that citizen complaints of police misconduct be preserved.  At the same time, the *Pitchess* statutes sought to protect police officers' strong privacy interest in their personnel records by providing that, under Evidence Code sections 1043 through 1046, discovery could not be made without "intervention of a neutral trial judge, who examines the personnel records in camera . . . and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations.  In this manner, the Legislature has attempted to protect [a criminal defendant's] right to a fair

10

trial and the officer's interest in privacy to the fullest extent possible. [Citation.]"
(*People v. Mooc* (2001) 26 Cal.4th 1216, 1227 (*Mooc*).)

In enacting these statutes, the "major focus" of the Legislature was "the type of record at issue in *Pitchess*—records of *citizen complaints* against police officers." (*POST*, *supra*, 42 Cal.4th at p. 293, italics added.) The statutes ensured that these records were maintained, while at the same time providing assurances to police officers that citizen complaint records would remain confidential unless specific procedures were followed. (See *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1085 (*Haggerty*); *Warrick*, *supra*, 35 Cal.4th at pp. 1018-1019; *Mooc*, *supra*, 26 Cal.4th at pp. 1225-1227.)

While the parties' briefs on appeal debate the competing policy arguments favoring or opposing disclosure of the officers' identities in this case, in enacting the *Pitchess* statutes, the Legislature itself made the necessary policy choices when it decided which information should be public and which information should be exempt from disclosure. (See *POST*, *supra*, 42 Cal.4th at p. 298 [in enacting *Pitchess* statutes, the Legislature "drew the line carefully, with due concern for the competing interests"].) Having made those policy choices, this case turns on whether, as a matter of statutory interpretation, the exemption provided by section 832.7, subdivision (a), applies to protect the officers' identities in this case. This is a legal question, and is accorded de novo review. (*MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 657.)

The court's objective when construing a statute is to determine the Legislature's intent so that we may adopt a construction that best effectuates the purpose of the law. (*Doe v. Brown* (2009) 177 Cal.App.4th 408, 417-418.) The plain meaning is to be discerned from the ordinary meaning of the language, as well as the context of the statute where that provision is found, related provisions, and the statutory scheme as a whole. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106-1107.) Although our review of the statutory scheme is de novo, the appellate court must proceed "according the usual deference to any

11

express or implied *factual* findings of the superior court supported by substantial evidence."  (*Connell v. Superior Court* (1997) 56 Cal.App.4th 601, 612, italics added.)

### C. Scope of Confidentiality Under Section 832.7, subdivision (a)

In this request for writ relief, FUPOA makes a single argument—that all of the names of the officers that were redacted from the reports were protected information and not subject to disclosure under section 832.7, subdivision (a).  It is generally recognized that there are two broad categories of information protected from disclosure by section 832.7, subdivision (a): (1) records relating to a mandated investigation of citizens' complaints against an officer as defined in section 832.5; and (2) police personnel records, meaning records maintained under an officer's name by his or her employer and containing personal data and employment history, including disciplinary documentation, as defined in section 832.8, subdivisions (a) through (f).  (*Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419, 426, quoting *City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1440 ["section 832.7 . . . imposes confidentiality upon peace officer personnel records and records of investigations of citizens' complaints"].)  Importantly, as we have already noted, these exemptions are to be narrowly construed.

### 1. Citizens' Complaints

As for the first category of exempted material, section 832.7, subdivision (a) provides, in pertinent part, "[R]ecords maintained by any state or local agency *pursuant to Section 832.5*, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code."  (Italics added.)  Section 832.5 requires all departments or agencies that employ peace officers to establish procedures to investigate allegations of officer misconduct (§ 832.5, subd. (a)), and to preserve records from their investigations for at least five years (§ 832.5, subd. (b)).  Therefore, under section 832.7, subdivision (a), the records of an investigation stemming from a citizen's complaint, which potentially could be relevant to a criminal defendant's defense in a *Pitchess* proceeding, are considered "confidential" and exempt from disclosure as part of an officer's personnel records.

FUPOA claims that *Berkeley Police Assn. v. City of Berkeley* (2008) 167 Cal.App.4th 385 (*Berkeley Police*), stands for the broad proposition that any "investigative materials and findings" that concern a police officer are confidential. This is not a fair reading of *Berkeley Police*'s rationale, nor is that case factually similar to our own. There, the court was required to address whether the proceedings conducted by a police review commission, which was established to investigate citizens' complaints, but not to impose discipline, fell within section 832.5. In that case, the commission was a standing body that received written complaints from citizens, investigated the substance of the allegations, held public hearings on the complaints, required the subject officers to provide information, and then announced its findings on each allegation, which could be "exonerated," "unfounded," "not sustained," or "sustained." (*Id.* at p. 391.) Not surprisingly, the court in *Berkeley Police* found that the commission proceedings "fit the description of [a] section 832.5" proceeding, and the commission's practice of holding public hearings on citizen complaints necessarily violated section 832.7, subdivision (a), by disclosing confidential police officer personnel information, including the identity of the officer subject to the complaint. (*Id.* at pp. 402, 404-405.)

In contrast to *Berkeley Police*, the reports here are not the result of an investigation of any citizen complaint under section 832.5. Moreover, nothing in the reports identifies any officer who was the subject of a citizen's complaint, or who was disciplined in connection with the pepper spray incident. To the contrary, even if a citizen had submitted a complaint about a specific officer's conduct in connection with the pepper spray incident, it is clear from the text of the reports that they were not prepared in response to any such complaint, but were prepared at the behest of UC for other purposes, and using entirely different protocols from those commonly involved in conducting disciplinary investigations or proceedings.

Thus, unlike a citizen's complaint procedure, which addresses a specific complaint about a specific police officer's actions, the reports' focus took a larger view and examined the internal workings of the UC and the UC Davis Police Department. They assessed how the policies and procedures that were in effect on November 18, 2011,

13

influenced how the police officers handled the protestors, and whether institutional changes were appropriate. Most telling, while the reports make policy level recommendations, they expressly do not make any recommendations regarding whether it was appropriate to admonish or discipline any police officer in connection with the pepper spray incident. These facts demonstrate that unlike, *Berkeley Police*, the reports are not the result of a de facto section 832.5 investigation of a citizen's complaint, and disclosing the redacted police officers' names would reveal nothing about officer discipline.

### 2. *Police Personnel Records*

The second broad category of material exempted by section 832.7, subdivision (a) is "[p]eace officer or custodial officer personnel records." Section 832.8 defines "personnel records" as used in section 832.7, subdivision (a). It provides as follows: "As used in Section 832.7, 'personnel records' means any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following:

"(a) Personal data, including marital status, family members, educational and employment history, home addresses, or similar information.

"(b) Medical history.

"(c) Election of employee benefits.

"(d) Employee advancement, appraisal, or discipline.

"(e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties.

"(f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy."

The presumptive rationale in exempting these categories of information from public disclosure is to shield highly personal information that is often found in an individual officer's employment or other personnel file, such as the officer's address, telephone number, marital status, medical background, and other highly private matters.

14

Also exempted are documents assessing an individual officer's on-the-job performance, such as internal evaluations, disciplinary reports or documentation evidencing promotions, demotions, or termination—the type of documents typically sought in a *Pitchess* motion.[8]

Our Supreme Court has held that a police officer's identity and conduct while on the job are not private, intimate, personal details of the officer's life. Rather, they are matters with which the public has a right to concern itself. (*POST*, *supra*, 42 Cal.4th at p. 297 [the public has a "legitimate interest in the identity and activities of peace officers"].) Focusing on the precise language of the statute, the Supreme Court narrowly construed the key term, "[p]ersonal data," as used in section 832.8, subdivision (a), as prohibiting disclosure of sensitive information such as marital status, family members, educational and employment history, or similar information. (*POST*, at p. 294.) In so doing, the high court refused to expand the exemption to include an officer's name, employing agency, and hiring and termination date, explaining that "[w]ithout a more specific indication in the statute, we hesitate to conclude that the Legislature intended to classify the identity of a public official whose activities are a matter of serious public concern as " 'personal data.' " (*Id.* at p. 296.)

This conclusion was justified, as the *POST* court found, because the Legislature easily could have included names as a protected category of information, but chose not to do so. "Had the Legislature intended to prevent the disclosure of officers' identities as such, an obvious solution would have been to list 'name' as an item of '[p]ersonal data' under subdivision (a) of section 832.8. [Citation.]" (*POST*, *supra*, 42 Cal.4th at p. 298.)

---

[8] Consequently, there can be no question that disclosure of information obtained from a citizen complaint board and/or an internal affairs investigation conducted by an employer for the purpose of determining whether to sanction a law enforcement officer falls within the protection for confidential personnel records under section 832.8. This is aptly illustrated by numerous cases. (See *City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1416; *City of Richmond*, *supra*, 32 Cal.App.4th at pp. 1440-1441; *Davis v. City of San Diego* (2003)106 Cal.App.4th 893, 900.) However, these courts did not purport to address the question before us.

15

The *POST* court concluded that it was "unlikely that the Legislature contemplated that the identification of an individual as a peace officer, *unconnected to any of the information* it defined as part of a personnel record, would be rendered confidential by section 832.8." (*Id.* at pp. 295-296, italics added; see also *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 343 [public disclosure of peace officer salary information is not precluded by sections 832.7 and 832.8]; 91 Ops.Cal.Atty.Gen. 11 (2008) [*Pitchess* statutes do not prevent disclosure of the names of peace officers involved in critical incidents in response to a CPRA request unless on the facts of the particular case, an officer's interest in privacy outweighs the public's interest in disclosure].)

Therefore, under *POST*, it is clear that the names of officers interviewed or involved in the pepper spray incident are not within the classes of information designated "[p]ersonal data" protected from disclosure by section 832.8, subdivision (a). Indeed, police officers release their names to the public every day when they put on their uniforms, which are required to have name tags (see § 830.10) unless anonymity is required, such as officers who are working undercover. They routinely identify themselves when they go about their official duties—such as signing the tickets and citations they issue, writing police reports, and stating their names when they testify in open court.

In this particular incident, the officers' identities and actions with respect to the pepper spray incident were witnessed by hundreds of people and memorialized and widely distributed in the numerous photographs and videotape recordings taken by

16

members of the public.[9]  The incident was the subject of numerous news accounts describing the actions of various officers, in some cases identifying the officers by name. The fact that certain officers involved in this incident might face an internal affairs investigation or discipline because of their actions does not transmute all of this information into disciplinary documentation or confidential personnel information, as FUPOA seems to claim.  If we gave the exemption for confidential personnel records such a broad interpretation, the exemption would soon swallow up citizens' disclosure rights under the CPRA, and defeat one of its central purposes—to ensure "[m]aximum disclosure of the conduct of governmental operations . . . ."  (*CBS*, *supra*, 42 Cal.3d at pp. 651-652.)

Nevertheless, FUPOA argues that there are considerations in this case that elevate the privacy interests at stake beyond those considered in *POST*.  Specifically, FUPOA points out that the information requested here would reveal more than just the name of each of the police officers who were interviewed for the report; the release of the officer's name would be linked with the officer's statement providing an eyewitness account of the pepper spray incident and identifying other officers, which FUPOA claims places the information squarely within several of the exceptions codified at section 832.8.

In pursuing this assertion, FUPOA relies on section 832.8, subdivision (e), which states that information is an exempted personnel record if it consists of "[c]omplaints, or investigations of complaints, concerning an event or transaction in which [an officer] participated, or which he or she perceived, and pertaining to the manner in which he or

---

[9]  The trial court found, "The members of . . . FUPOA have a limited privacy interest in keeping the fact and nature of their participation in the Incident confidential. The members of . . . FUPOA are public employees who participated in the [pepper spray incident], which was in a public area, and was viewed in person by dozens of onlookers, recorded by several onlookers and viewed on the internet by tens of thousands of persons. Throughout the [pepper spray incident] members of . . . FUPOA were wearing badges that identified them by name."  We also acknowledge that the Second Appellate District has recently issued an opinion holding that a peace officer's official photograph is not a personnel record under section 832.8.  (*Ibarra v. Superior Court* (2013) 217 Cal.App.4th 695.)

17

she performed his or her duties." Furthermore, because the reports examine certain officers' conduct during the pepper spray incident and draw conclusions about the propriety of this conduct, FUPOA claims that this case involves information about "[e]mployee . . . appraisal, or discipline" bringing it within the category of exempted information provided by section 832.8, subdivisions (d).

We reject these arguments. Disclosing the names of the officers who gave their own eyewitness accounts of the pepper spray incident does not fit within section 832.8, subdivision (e)'s prohibition against disclosing information regarding, "*[c]omplaints or investigations of complaints*," nor do these third party accounts pertain "*to the manner in which he or she performed his or her duties*." (Italics added.) While the statute clearly exempts information about a complaint or investigation of a complaint about an *individual officer*'s conduct, the statute does not exempt information relating to the identities and conduct of the *police in general* during a high-profile incident that is under scrutiny and review for the purpose of undertaking a system-wide review of police procedures. (See *Zanone v. City of Whittier* (2008) 162 Cal.App.4th 174, 186-190 [investigation into officer's complaint of racial discrimination was not within the ambit of information protected from disclosure by section 832.8, subdivision (e), because that section only concerns those complaints or investigations that pertain to the manner is which an officer has performed his or her duties].)

Nor does the disclosure of the officers' names reveal any information about the "advancement, appraisal, or discipline" of any particular officer, as described in section 832.8, subdivision (d). The newspapers are not asking for the names of officers in connection with any disciplinary appeal or investigations of civilian complaints, nor does disclosure of the names of the officers indentified by pseudonyms in the reports reveal any information about disciplinary proceedings or civilian complaint investigations taken against any police officers in connection with the pepper spray incident. (Compare *Copley Press*, *supra*, 39 Cal.4th at pp. 1297-1298 [name of officer could not be disclosed when newspaper sought the name in connection with a disciplinary appeal].) In fact, the investigation undertaken in preparing these reports, which included selecting officers to

18

interview who were not subject to any disciplinary proceedings themselves, has no bearing whatsoever on any possible disciplinary action—its main purpose appears to be providing recommendations on how to avoid such incidents in the future.

### D. Conclusion

Section 832.7, subdivision (a)—the sole exemption relied upon by FUPOA—defines two categories of information protected from disclosure under CPRA. They are: (1) records relating to a mandated investigation of citizens' complaints as defined in section 832.5, and (2) police personnel records, as defined in section 832.8, subdivisions (a) through (f). Giving these categories of information the requisite narrow construction the law requires, we conclude that FUPOA has failed to meet its burden of proving that the information the newspapers seeks is exempt from disclosure.

As we have explained, sections 832.7, 832.5 and 832.8 do not include any description of exempted information that could reasonably be interpreted to include the identity of officers, who were compelled to give eyewitness accounts of the pepper spray incident in order to assist in the preparation of agency-initiated reports whose avowed purpose was not to discipline individual officers, but to promote accountability and transparency. This is not a confidential personnel matter protected by the *Pitchess* statutes. As our Supreme Court has emphasized, "[t]he public has a legitimate interest not only in the conduct of individual officers, but also in how . . . local law enforcement agencies conduct the public's business." (*POST*, *supra*, 42 Cal.4th at p. 300.) The fact that this type of information does not fit within any of the categories of information that the Legislature has designated as exempt information is determinative here. (See *id*. at p. 290 [refusing to give the *Pitchess* statutes an interpretation that " ' " 'would result in absurd consequences which the Legislature did not intend' " ' "].)

### IV.

### DISPOSITION

The writ of mandate is denied. The order to show cause, having served its purpose, is discharged. However, the stay order previously issued by this court remains effective until finality of this decision to allow FUPOA the opportunity to seek review in

19

the California Supreme Court. If the time for filing a petition for review in the Supreme Court expires, and no review has been sought, the stay preventing UC from releasing unredacted copies of the reports is vacated. FUPOA is to bear all costs.

_____
RUVOLO, P. J.

We concur:

_____
REARDON, J.

_____
RIVERA, J.

A136014, *Federated Univ. Police Ofcrs. Assn v. Superior Court*

Trial Court:                        Alameda County Superior Court

Trial Judge:                        Hon. Evelio Grillo

Counsel for Petitioner:             Lackie, Dammeier, & McGill
                                    Lackie, Dammeier, McGill & Ethir
                                    Dieter C. Dammeier, Michael A. Morguess

Counsel for Real Parties            Davis Wright Tremaine
in Interest:                        Thomas R. Burke, Rochelle L. Wilcox,
                                    Jeff Glasser

                                    Office of the General Counsel, University
                                    of California, Charles F. Robison, Karen J.
                                    Petrulakis, Margaret L. Wu

                                    Crowell & Moring, J. Daniel Sharp